FILED
2013 NOV 14  AM 10: 22
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

___ mba

Frederic L. Gordon, Esq. SBN 98994
E-mail: Fgordon@Gordonandholmes.com
GORDON & HOLMES
223 W. Date Street
San Diego, California 92101-3571
Tel: 619-696-0444 Fax: 619-696-1144

Attorneys for Plaintiff JACOB PETERSEN

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| JACOB PETERSEN, and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TOWNSEND FARMS, INC., an Oregon corporation doing business in California, PURELY POMEGRANATE, INC., a California corporation, FALLON TRADING CO., INC., a Pennsylvania corporation doing business in California, UNITED JUICE CORP., a New Jersey corporation doing business in California, and Does 1-10, inclusive,<br><br>Defendants. | Case No.: SA CV-13-01292 DOC (JCGx)<br><br>**SECOND AMENDED COMPLAINT**<br><br>**IMAGED FILE**<br><br>Judge:      Hon. David O. Carter<br>Dept.:      9D<br>Trial Date: None Set<br><br>**HEPATITIS A CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW the Plaintiff, JACOB PETERSEN, on behalf of himself and all those similarly situated, by and through his counsel of record, FREDERIC L. GORDON of GORDON & HOLMES, alleges and complains as follows:

## PARTIES

1. **JACOB PETERSEN:** The plaintiff resides at 1229 Spectrum, Irvine, Orange County, California.

2. **TOWNSEND FARMS, INC.:** The Defendant Townsend Farms, Inc.

(hereinafter "Defendant") is an Oregon corporation that manufactures, distributes, and sells a variety of fresh and frozen fruit products. At all times material hereto, the Defendant carried on in the ordinary course of business the manufacture, distribution, and sale of "Townsend Farms Organic Anti-Oxidant Blend," a frozen berry and pomegranate seed mix that the Centers for Disease Control and Prevention has determined to be the cause of an outbreak of 61 hepatitis A illnesses in seven western states. At all times material hereto, the Defendant knowingly distributed and sold the "Townsend Farms Organic Anti-Oxidant Blend" product at Costco retail store locations throughout the western United States, including in the State of California.

3. **PURELY POMEGRANATE INC.:** The Defendant, Purely Pomegranate, Inc. (hereinafter "Purely Pomegranate") is a California corporation that imports, manufactures, distributes, and sells premium pomegranate products, including pomegranate seeds, to consumers and other food manufacturing businesses across the country. At all times material hereto, Purely Pomegranate carried on at its business location at 33971 Selva Road, Suite 240, Dana Point, California, the import, manufacture, distribution, and sale of pomegranate seeds to Townsend Farms for inclusion in the "Townsend Farms Organic Antioxidant Blend" product that has been determined to be the cause of an outbreak of at least 162 HAV illnesses in ten states.

4. **FALLON TRADING CO., INC.:** The Defendant, Fallon Trading Co., Inc., (hereinafter "Fallon Trading") is a Pennsylvania corporation that imports, manufactures, distributes, and sells premium pomegranate products, including pomegranate seeds, to consumers and other food manufacturing businesses across the country. At all times material hereto, Fallon Trading carried on at its business location at 35 Schultz Road, Green Lane, Pennsylvania, the import, manufacture, distribution, and sale of pomegranate seeds to Townsend Farms and others for inclusion in the "Townsend Farms Organic Anti-Oxidant Blend" product that has been determined to be the cause of an outbreak of at least 162 HAV illnesses in ten states.

5. **UNITED JUICE CORP.:** The Defendant, United Juice Corp., (hereinafter

"United Juice") is a New Jersey corporation that imports, manufactures, distributes, and sells premium pomegranate products, including pomegranate seeds, to consumers and other food manufacturing businesses across the country. At all times material hereto, United Juice carried on at its business location at 9019 River Road 2nd Floor, Rochelle Park, New Jersey, the import, manufacture, distribution, and sale of pomegranate seeds to Townsend Farms and others for inclusion in the "Townsend Farms Organic Anti-Oxidant Blend" product that has been determined to be the cause of an outbreak of at least 162 HAV illnesses in ten states.

6. **JOHN DOES 1-10**: Plaintiffs are ignorant of the true names and capacities of defendants named herein as DOES 1 through 10, inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs will amend the complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe that each fictitiously named DOE Defendant is the agent of Defendants TOWNSEND FARMS and in doing the acts herein alleged, were acting within the scope and course of this agency relationship and have responsibility for the acts alleged herein.

## JURISDICTION AND VENUE

7. Defendants have engaged in substantial, continuous, and systematic contacts within the State of California, purposefully directing their activities towards California, including the placement of their goods into the stream of commerce with the intent and expectation they will be purchased by consumers in California, and this litigation arises out of those activities; and (b) venue would be proper in California because the facts giving rise to one of the Plaintiffs' claims arose in California, and Plaintiffs were injured in California.

8. Defendant Purely Pomegranate, upon its removal of this action to the United States District Court for the District of California, asserts the California District Court has removal jurisdiction over this matter pursuant to 28 U.S.C. §§ 1441(b) and 1332(a), which

allegation Plaintiffs do not concede, but otherwise have elected to not dispute.

9. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## NATURE OF THE ACTION

10. This is a class action lawsuit brought on behalf of Plaintiffs and all persons injured as a result of actual or potential exposure to the hepatitis A Virus (hereinafter "HAV") in actually or potentially contaminated "Townsend Farms Organic Anti-Oxidant Blend" (hereinafter "the Product") imported, manufactured, distributed, and sold by the Defendants. The Product was sold by Costco stores in the affected states, including Washington, Colorado, New Mexico, Nevada, Arizona, Utah, Hawaii, and California, and likely others, and was recalled by Townsend Farms. According to Townsend Farms, such recall was "because [the Product] has the potential to be contaminated with Hepatitis A virus, based on an ongoing epidemiological and traceback investigation by the FDA and the CDC of an illness outbreak." *See* http://www.townsendfarms.com/ (checked June 9, 2013). The exposure occurred as the result of 1) consumption of the Product or 2) exposure to, or close proximity with, the Product or persons who were exposed to the Product.

11. The potential class action Plaintiffs in this lawsuit are those persons who (1) were required, for public health and personal safety reasons, to obtain a vaccination against HAV, or who received a prophylactic dose of immune globulin (IG), due to their exposure in the manners set forth in the preceding paragraph, and/or (2) underwent serology or other diagnostic testing procedures to determine whether such exposure had resulted in infection by HAV.

## CLASS ACTION ALLEGATIONS

12. This action is brought as a class action upon removal pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of all persons who (1) consumed the Product or (2) were exposed to, or were otherwise close proximity to, the Product or persons who were exposed to the Product, and (3) thereafter received vaccinations against HAV or a prophylactic dose of IG, and/or underwent serology or other diagnostic testing procedures to determine whether such exposure had resulted in infection by HAV.

13. The Plaintiffs do not yet know the precise size of the class because this information remains confidential and within the exclusive control of the applicable state and regional health departments and districts, and Costco stores. However, the Plaintiffs understand and believe that the Product was distributed to Costco stores and thereafter sold to consumers over a wide geographic region between a date in the first several months of 2013 to the date that the outbreak linked to the Defendants' Product was announced, May 31, 2013, on or about which date Costco stores removed the Product from store shelves due to its actual/potential contamination. The Plaintiff therefore believes that the number of potential class members may be in excess of 10,000.

14. As the Product was distributed and sold in high volume, over several months, and over a wide geographic region, joinder is impracticable. Nevertheless, notice of this class action to each potential respective class member can be accomplished once the respective individual class is certified, because the identity of potential class members is known by state, regional, and other public health organizations that can issue notification to potential class members, and because Costco stores are in possession of a list of all individuals who purchased the Product during the relevant time frame.

15. There are numerous questions of law and fact that are common to the respective class members, including but not limited to:

    (a) Whether the Product was actually or potentially contaminated with HAV;

    (b) Whether Defendant Townsend Farms breached express and implied warranties by its import, manufacture, distribution and sale of food that was actually or potentially contaminated with HAV;

    (c) Whether Defendants Townsend Farms, Purely Pomegranate, Fallon Trading and United Juice were negligent in their import, manufacture, distribution and sale of food that was actually or potentially contaminated with HAV;

    (d) Whether Defendants Townsend Farms, Purely Pomegranate, Fallon Trading and United Juice are strictly liable for their import, manufacture, distribution and sale of food that was actually or potentially contaminated with HAV;

    (e) Whether Defendants Townsend Farms, Purely Pomegranate, Fallon Trading and United Juice are liable to all exposed persons who obtained vaccination or a prophylactic dose of IG to avoid infection or illness.

    (f) Whether Defendants Townsend Farms, Purely Pomegranate, Fallon Trading and United Juice are liable to all exposed persons who underwent serology and/or other diagnostic testing procedures to determine whether their exposure to the Defendants' Product had resulted in infection by HAV.

16. Common questions of law and fact predominate over any questions affecting only individual class members.

17. The Plaintiffs' claims are typical of the claims available to all potential class

members, each of whom was exposed to either actually or potentially contaminated foods and/or actually or potentially infected persons. The damages and relief sought by these Plaintiffs are also common to the exposed class and its members because the nature and process of vaccination or immunization treatment, and/or serology or other diagnostic testing, all related costs, and additional consequential losses are also similar throughout the exposed class.

18. The Plaintiffs will fairly and adequately represent and protect the interests of the class. The Plaintiffs have no identifiable conflicts with any other potential class member.

19. The Plaintiffs have retained competent counsel, who are experienced in foodborne illness litigation and who have extensive experience with class action litigation. The Plaintiffs' counsel – William D. Marler, Esq. and the Seattle, Washington law firm of Marler Clark – has represented more than 1,500 individuals in a class action related to an HAV outbreak at the D'Angelo's in Swansea, Massachusetts in 2001. Marler Clark has also represented approximately 1,300 persons as part of a class action on behalf of persons who received IG shots due to an HAV outbreak in June and July, 2000 in Spokane, Washington, which was associated with food served at a Carl's Jr. fast food restaurant there. In 2003, Marler Clark represented approximately 9,000 persons who received IG shots due to an outbreak of HAV at a Chi-Chi's restaurant near Pittsburgh, Pennsylvania. Marler Clark also represented approximately 3,800 persons as part of a class action on behalf of persons who received IG shots due to an HAV exposure in June, 2004 at a Friendly's restaurant in Arlington, Massachusetts. Marler Clark also represented approximately 850 persons as part of a class action on behalf of persons who received IG shots due to an HAV exposure at a Quizno's in Boston, Massachusetts in 2004. Marler Clark also represented over 3,000

persons who received IG shots due to potential HAV exposure in January 2007 at a Houlihan's restaurant in Geneva, Illinois. In 2009, Marler Clark represented more than 5,000 persons who were required to get vaccinations against HAV following exposure at a McDonald's restaurant in Milan, Illinois. Marler Clark also represented over 3,000 persons who received HAV vaccines in 2011 due to exposure at a Fayetteville, North Carolina Olive Garden. Marler Clark also has extensive experience representing victims who developed HAV acute illnesses.

20. The Plaintiffs are unaware of any possible difficulty in the management of this litigation that would prevent it from being maintained as a class action. The class action mechanism is superior to other alternatives, if any exist, for the fair adjudication of the controversy.

21. The identity of potential class members can be ascertained from the various state and regional health agencies that have administered vaccinations or IG shots, or who have been informed of such vaccination or IG shots by either patient or provider report, and also from Costco stores, which stores are in possession of lists identifying all people who have purchased the Product.

22. In the absence of a class action, individual litigation of these claims will be unreasonably expensive in light of the probable damages that might be recovered, and will unreasonably burden the courts of this state and others, and will waste important judicial resources.

23. In the absence of a class action, individual litigation will also waste money that would otherwise be available to compensate these persons who were potentially exposed to infected persons or contaminated food, and accordingly needed vaccination or IG shots.

24. In the absence of a class action, persons who might otherwise possess a remedy, and might otherwise be able to seek judicial relief, may be left without a reasonable means to obtain justice and full compensation for the injuries they sustained.

25. In the absence of a class action, and in the absence of prompt notification of all potential class members, any minor claims arising from this HAV exposure/outbreak, and the related vaccinations and IG shots, may languish, and may do so without the statute of limitations beginning to run until each minor turns 18. As a result, litigation related to this potential outbreak could be in the courts, intermittently, and without coordination, for the next 20 years. In contrast, a class action lawsuit will allow for the efficient and expeditious adjudication of all such claims.

## OTHER FACTUAL ALLEGATIONS

26. As of September 23, 2013, at least 162 people were infected by HAV and became ill due to consumption of the Defendants' Product. The illnesses thus far have been reported to have occurred in residents of at least ten states: Washington, Colorado, New Mexico, Nevada, New Jersey, Arizona, Utah, Hawaii, Wisconsin, and California.

27. Defendants Townsend Farms, Purely Pomegranate, Fallon Trading and United Juice imported, manufactured, distributed, and sold the Product to Costco stores across the western United States, and possibly to other Costco stores across the country, for retail sale.

28. On or about the date of the public announcement about the HAV outbreak associated with the Defendants' Product, May 31, 2013, Costco stores removed the Defendants' Product from store shelves. One or more of the Defendants later recalled all affected, potentially contaminated Product.

29. HAV, which causes severe gastrointestinal illness and, in severe cases, liver

SECOND AMENDED COMPLAINT

Case No. SA CV-13-01292 DOC (JCGx)

failure and death, incubates in the human body for between 15 and 50 days. Therefore, public health officials across the country continue to monitor for additional HAV infections and illnesses occurring as part of the HAV outbreak associated with the Defendants' Product.

30. The CDC and other state and regional public health agencies have advised any purchasers of the Defendants' Product to refrain from consuming the Product, and to obtain HAV vaccination, or a prophylactic dose of IG. Public health officials have also recommended that people exposed to an individual known to have become ill in the Defendants' HAV outbreak, or who were exposed to the Product, to also obtain HAV vaccination, or a prophylactic dose of IG.

31. It is estimated that more than 10,000 people were potentially exposed to HAV as a result of the Defendants' import, manufacture, distribution, and sale of the actually/potentially contaminated Product. These exposed individuals were exposed either by consumption of the Product, or exposure or close proximity to the Product or a person who consumed the Product.

32. Plaintiffs purchased and/or consumed the Product before the Product's association with the HAV outbreak was known, and before Costco stores removed the Product from store shelves. Plaintiffs thereafter received vaccinations against HAV or a prophylactic dose of IG, and/or underwent serology or other diagnostic testing procedures to determine whether such exposure had resulted in infection by HAV.

### STRICT LIABILITY

33. By this reference, the Plaintiffs incorporate the preceding paragraphs of this complaint as if each and every one of these paragraphs was set forth here in its entirety.

34. Defendants Townsend Farms, Purely Pomegranate, Fallon Trading and United

Juice imported, manufactured, distributed, and sold the Product that was the cause of at least 162 HAV illnesses in ten states, as described previously, and that caused the Plaintiffs and others similarly situated—i.e. the potential class members—to obtain vaccination or a prophylactic dose of IG due to their exposures, and/or to undergo serology or other diagnostic testing to determine whether exposure to the Product had resulted in HAV infection.

35. Because the Defendants' Product was actually/potentially contaminated by HAV, the food that the Defendants imported, manufactured, distributed and sold to Costco, and that the consumers purchased and consumed, as described previously, was in a condition that the consumers had not contemplated, and was in a condition that rendered the food Product unreasonably dangerous for its ordinary and expected use.

36. The food Product that the Defendants imported, manufactured, distributed and sold to Costco, and that the consumers purchased and consumed, as described previously, was expected to reach the consumers, and be consumed by them, without substantial change. The consumers used the Product in the manner expected and intended, including when they consumed it.

37. The Plaintiff and the class suffered the aforementioned injuries as a direct and proximate result of the contaminated, defective food Product imported, manufactured, distributed and sold by the Defendants.

## NEGLIGENCE

38. By this reference, the Plaintiffs incorporate the preceding paragraphs of this complaint as if each and every one of these paragraphs was set forth here in its entirety.

39. The Defendants imported, manufactured, distributed, and sold a food Product

that was actually/potentially adulterated, not fit for human consumption, and that was not reasonably safe as designed, manufactured, or sold.

40. Defendants Townsend Farms, Purely Pomegranate, Fallon Trading and United Juice were negligent in importing, manufacturing, distributing, and selling a food Product that was actually/potentially adulterated with HAV, not fit for human consumption, and not reasonably safe because it was actually/potentially contaminated with HAV and because adequate warnings or instructions were not provided, including but not limited to the warning that its Product may contain HAV, and thus should not be given to, or eaten by humans.

41. The Defendants had a duty to properly supervise, train, and monitor their employees, or the employees of their agents or subcontractors, engaged in the preparation of its food Product, to ensure compliance with the Defendants' operating standards and to ensure compliance with all applicable health regulations. The Defendants failed to properly supervise, train, and monitor these employees, or the employees of their agents or subcontractors engaged in the import, manufacture, preparation and delivery of the Product, and thus breached that duty.

42. The Defendants owed a duty to the Plaintiffs and the class to comply with all statutory and regulatory provisions that pertained or applied to the import, manufacture, distribution, storage, labeling, and sale of their food Product, including all applicable local, state, and federal health and safety regulations. The Defendants, by their import, manufacture, distribution, storage, labeling, and sale of adulterated, unsafe, and unhealthy food Product, failed to conform to this duty.

43. The Defendants owed the Plaintiffs and the class the duty to exercise

reasonable care in the preparation and sale of their food Product, as it was reasonably foreseeable that the Defendants' import, manufacture, distribution and sale of food Product actually/potentially contaminated with HAV would cause injury and harm to all persons potentially exposed to HAV as a result. The Defendants have breached that duty, and thereby caused injury to the Plaintiffs and the class.

44. The Defendants were negligent in importing, manufacturing, distributing and selling a food Product actually/potentially contaminated with HAV. The Defendants' negligent acts and omissions included, but were not limited to:

(a) Failure to prevent the actual/potential contamination of their food Product by HAV.

(b) Failure to properly supervise, train, and monitor their employees, or the employees of their agents or subcontractors, on how to ensure the import, manufacture, distribution and sale of food Product free of adulteration by potentially lethal pathogens. Defendants owed the Plaintiffs and the class a duty to comply with all statutory and regulatory provisions that pertained or applied to the import, manufacture, distribution, storage, labeling and sale of their food Product.

45. The food Product that the Defendants imported, manufactured, distributed and sold, and that the consumers purchased and consumed, was "adulterated" within the meaning of the federal Food, Drug and Cosmetic Act, because (*inter alia*): it contained a deleterious substance that rendered it injurious to health; it consisted in whole or in part of a diseased, contaminated, filthy, putrid or decomposed substance, or was otherwise unfit for food; and/or it had been produced, prepared, packed or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered diseased,

unwholesome or injurious to health.

46. Defendants violated federal, state and local food safety regulations by their import, manufacture, distribution and sale of adulterated food Product.

47. The federal, state and local food safety regulations applicable here, and as set forth above, establish a positive and definite standard of care in the import, manufacture, distribution and sale of food, and the violation of these regulations constitutes negligence *per se*.

48. The Plaintiffs and class members were in the class of persons intended to be protected by these statutes and regulations, and were injured as the direct and proximate result of the Defendants' violation of applicable federal, state and local food safety regulations.

49. The Defendants breached the aforementioned duties as alleged herein, which breach constituted the proximate cause of the Plaintiffs' and class members' injuries.

## BREACH OF WARRANTIES (Townsend Farms only)

50. By this reference, the Plaintiffs incorporate the preceding paragraphs of this complaint as if each and every one of these paragraphs was set forth here in its entirety.

51. Defendant Townsend Farms imported, manufactured, distributed and sold the Product to Costco, and consumers (including the Plaintiffs) purchased the Product from a Costco store.

52. By selling the food Product to the consumers, the Defendant impliedly warranted that the food Product sold was fit for the ordinary purpose for which food is used.

53. By selling food to the consumers, the Defendant expressly warranted that such food was safe to eat, that it was not actually/potentially adulterated with a deadly pathogen,

and that the food had been safely prepared.

54. At the time of this sale, being actually/potentially contaminated with HAV, the Product was not fit for the ordinary purpose for which food is used, and the Defendant breached its express and implied warranties with regard to the food Product it imported, manufactured, distributed and sold to consumers.

55. The Plaintiffs and the class members suffered personal injury as a direct result of the Defendants' breach of express and implied warranties, as set forth above.

## DAMAGES

56. The Plaintiffs, and all those similarly situated, *i.e.* the class of persons identified herein, have suffered general and special, incidental and consequential damages as the direct and proximate result of the acts and omissions of the Defendants, which damages shall be fully proven at the time of trial. These damages include, but are not limited to: damages for wage loss; medical and medical-related expenses; (the cost of vaccinations against HAV; the cost of a prophylactic dose of IG; the cost of serology and other diagnostic testing procedures to determine whether exposure to the Recalled Product resulted in infection by HAV); travel and travel-related expenses; emotional distress; fear of harm and humiliation; physical pain; physical injury; and all other ordinary, incidental and consequential damages as would be anticipated to arise under the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for the following relief:

(1) That the Court certify this class action under Rule 23(b)(3), Fed.R.Civ.P. or any other appropriate provision of Federal Rule 23, and appoint counsel herein as class counsel;

SECOND AMENDED COMPLAINT  Case No. SA CV-13-01292 DOC (JCGx)

(2) That the Court award Plaintiffs, and all those similarly situated—i.e. the potential class—judgment against Defendants Townsend Farms, Purely Pomegranate, Fallon Trading and United Juice, in such sums as shall be determined to fully and fairly compensate them for all general, special, incidental and consequential damages incurred, or to be incurred, as the direct and proximate result of the acts and omissions of Defendants, in an amount to be proven at trial;

(3) That the Court award Plaintiffs, and all those similarly situated—i.e. the potential class—their respective costs and disbursements, and award class counsel reasonable attorneys' fees;

(4) That the Court award Plaintiffs, and all those similarly situated—i.e. the potential class—the opportunity to amend or modify the provisions of this complaint as necessary or appropriate after additional or further discovery is completed in this matter, and after all appropriate parties have been served; and

(5) That the Court award Plaintiffs, and all those similarly situated—i.e. the potential class—such other and further relief as it deems necessary and proper in the circumstances.

DEMAND FOR JURY TRIAL

Dated: November 13, 2013

GORDON & HOLMES

Frederic L. Gordon
Attorneys for Plaintiff JACOB PETERSEN

SECOND AMENDED COMPLAINT          16          Case No. SA CV-13-01292
                                              DOC (JCGx)