1  Frederic L. Gordon, Esq. SBN 98994
   GORDON & HOLMES
2  223 W. Date Street
   San Diego, CA  92101-3571
3  Phone: 619-696-0444 / Fax: 619-696-1144
   Email: fgordon@gordonandholmes.com
4
   Richard R. Waite, Esq. SBN 097942
5  KEENEY, WAITE and STEVENS
   427 South Cedros Avenue, Suite 101
6  Solana Beach, CA  92075
   Phone: 858-523-2130 / Fax: 858-5232135
7  Email: rwaite@keenlaw.com
8
   William D. Marler, Esq.
9  *Admitted Pro Hac Vice*
   MARLER CLARK. L.L.P., P.S.
10 1301 Second Avenue, Suite 2800
   Seattle, WA  98101
11 Phone: 206-346-1888 / Fax: 206-346-1898
   Email: bmarler@marlerclark.com
12
13 Attorneys for Named-plaintiffs

14                 **UNITED STATES DISTRICT COURT**

15                **CENTRAL DISTRICT OF CALIFORNIA**

16                     **SOUTHERN DIVISION**

| | |
|---|---|
| 16 JACOB PETERSEN, GAYLE PRATHER, CHRISTOPHER MASON, SUZANNE FABER, JENABE CALDWELL, MOTOKO CALDWELL, LESLIE LEE, ANTHONY MCCONAGHY, THOMAS FIORE, LESLIE STRAKA, JAY SEWARDS, FRANCES SEWARD, individually, and others similarly situated,<br><br>Named-plaintiffs,<br><br>v.<br><br>COSTCO WHOLESALE CO., INC. a Washington corporation doing business in California, TOWNSEND FARMS, INC., an Oregon corporation doing business in California, PURELY POMEGRANATE, INC., a California corporation, FALLON TRADING CO., INC., a Pennsylvania corporation doing business in California, and UNITED JUICE CORP., a New Jersey corporation doing business in California,<br><br>Defendants. | Case No.: SA CV-13-01292 DOC (JCGx)<br><br>**THIRD AMENDED COMPLAINT**<br><br>**IMAGED FILE**<br><br>Judge:          Hon. David O. Carter<br>Dept.:          9D<br>Trial Date:     None Set<br><br>**HEPATITIS A CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

1

COME NOW the Named-plaintiffs, JACOB PETERSEN, GAYLE PRATHER, CHRISTOPHER MASON, SUZANNE FABER, JENABE CALDWELL, MOTOKO CALDWELL, LESLIE LEE, ANTHONY MCCONAGHY, THOMAS FIORE, LESLIE STRAKA, JAY SEWARDS, and FRANCES SEWARDS, individually, and for all those similarly situated, by and through counsel of record, FREDERIC L. GORDON of GORDON & HOLMES, RICHARD R. WAITE of KEENEY, WAITE and STEVENS and WILLIAM D. MARLER of MARLER CLARK, allege and complain as follows:

### PARTIES

1.    **JACOB PETERSEN:**  The plaintiff resides in Orange County, California. Mr. Petersen purchased Townsend Farms Organic Anti-Oxidant Blend Frozen Berry Mix on May 16, 2013, consuming the fruit first that same day, and then again on six following days. After learning of the outbreak and recall, he followed the urgings of the Orange County Department of Health and thus went to the Sand Canyon Urgent Care where he received an immune-globulin shotn for which he paid $120.00.  He returned the uneaten remains of the recalled-product to the Irvine Costco store on June 1, and he was then refunded $10.19.

2.    **GAYLE PRATHER:**  The plaintiff resides in Pima County, Arizona. Ms. Prather received a recorded telephone-message from Costco on May 31, 2013 alerting her to the contamination of the Townsend Farms Organic Anti-Oxidant Blend Frozen Berry Mix.  She had been consuming this product almost every day for over a month at this point. Extremely worried, she immediately went to the CDC website and read about the outbreak. The next day, she went to Walgreen's Take-Care Clinic and received a hepatitis-A vaccination, which cost $108.99.  Still concerned about the risk of contracting an infection that could lead to liver failure, Ms. Prather went twice to her doctor for further tests and reassurance.

3.    **SUZANNE FABER:**  The plaintiff resides in El Paso County, Colorado.  Ms. Faber bought Townsend Farms Organic Anti-Oxidant Blend Frozen Berry Mix near the beginning of May 2013, and she consumed the product between May 29 and June 3. After learning of the outbreak and recall, she followed the urgings of Costco and the CDC and received an immune-globulin shot on

2

1  June 4, 2013 from Colorado Springs Health Partners. Several days later, she was tested for the

2  hepatitis-A virus, testing negative.

3      4.      **JENABE and MOTOKO CALDWELL:**  The plaintiffs are husband and wife who

4  reside in Maui County, Hawaii. Mr. Caldwell, who is a veteran of World War II, was 87 years old at

5  the time of the incidents in question. He ate the Townsend Farms Organic Anti-Oxidant Blend

6  Frozen Berry Mix on almost a daily basis from October 2012 to June 3, 2013. The last bag he

7  purchased in April, but he did not begin to use it until the end of May and through the start of June.

8  About 25% of the fruit remained when he returned the recalled-product to Costco for a refund of

9  $10.29. As a result of his consumption of the recalled-product, Mr. Caldwell was forced to obtain a

10  shot of immune-globulin at the Veterans Administration in Kahului, Hawaii. Frances Caldwell

11  consumed Townsend Farms Organic Anti-Oxidant Blend Frozen Berry Mix during the same time

12  period as her husband. As a result of this consumption, she also obtained an immune-globulin shot,

13  but her shot was administered at the Maui Medical Group in Wailuku, Hawaii.

14      5.      **LESLIE LEE:**  The plaintiff resides in Kootenai County, Idaho. Ms. Lee ate

15  Townsend Farms Organic Anti-Oxidant Blend Frozen Berry Mix in the mornings, with Greek

16  yogurt, during the end of April and through the month of May. As a result of eating the recalled-

17  product, and after learning of the recall on the news, she received an immune-globulin shot at

18  Ironwood Family Practice on June 4, 2013, as advised by her doctor. The vaccination cost $101, the

19  doctor-visit cost $68, and the blood-work cost $156.60, as documented by receipts. Ms. Lee was not

20  insured at the time, thus exposure-related costs were all out-of-pocket expenses.  She returned the

21  recalled-product to Costco that same day, receiving a $10.27 refund. Costco refused, however, to

22  reimburse her for the cost of her exposure-related medical treatment.

23      6.      **ANTHONY MCCONAGHY:**  The plaintiff resides in Bernalillo County, New

24  Mexico. He was a regular purchaser and consumer of Townsend Farms Organic Anti-Oxidant Blend

25  Frozen Berry Mix. As a result of this consumption, he was forced to receive an immune-globulin

26  shot, as well as hepatitis-A vaccination. Because he was immune-compromised at the time, he was

27  referred by his doctor, Sharereh Hazini, MD, for follow-up with the New Mexico Department of

28  Health.

THIRD AMENDED COMPLAINT

7.     **THOMAS FIORE:**  The plaintiff resides in Clark County, Nevada. As a result of his eating Townsend Farms Organic Anti-Oxidant Blend Frozen Berry Mix, Mr. Fiore obtained a hepatitis-A vaccination at Costco's pharmacy.

8.     **LESLIE STRAKA:**  The plaintiff resides in Lane County, Oregon. Ms. Straka purchased Townsend Farms Organic Anti-Oxidant Blend Frozen Berry Mix on May 15, 2013, and consumed it on a daily basis, from May 18 through June 5, 2013. Based in part on advice of her physician to be treated "as soon as possible," she obtained the hepatitis-A vaccine at a Rite-Aid Pharmacy in Eugene, and followed up at her physician's office later that same day. She recalls that the cost of the vaccination was approximately $90. Ms. Straka is a cancer-survivor (Stage 4) and, as such, is concerned about her immune-system and her continuing health overall.

9.     **JAY and FRANCES SEWARDS:**  The plaintiffs are husband and wife, who reside in Jefferson County, Washington. Costco records Mr. Seward obtained show that he purchased nine bags Townsend Farms Organic Anti-Oxidant Blend Frozen Berry Mix from January to June 2013. In response to learning of the outbreak, including the number of infected person, and based on the recommendation of the CDC and Costco, both of the Sewards obtained a hepatitis-A vaccination at Dr. Brigg's office on June 6, 2013, with the vaccinations costing $137 each. Mrs. Seward had blood tests done the previous day, June 5, which cost $148.

10.     **CHRIS MASON:** The plaintiff presently resides in Osceola County, Florida, but at all times relevant to this action, he resided in Arizona. Mr. Mason obtained a hepatitis-A vaccination on the advice of the physicians treating Mr. Mason's girlfriend, Karen Echard, for a confirmed hepatitis-A infection epidemiologically linked to the recalled- Townsend Farms Organic Anti-Oxidant Blend Frozen Berry Mix. He obtained the vaccination from Dr. John Lincoln located at 3648 W. Anthem Way, Anthem, Arizona.

11.     **COSTCO WHOLESALE, CO., INC.:**  The defendant Costco Wholesale, Co., Inc. ("Costco") is a Washington corporation that sold "Townsend Farms Organic Anti-Oxidant Blend," a frozen berry and pomegranate seed mix that the Centers for Disease Control and Prevention ("CDC") determined to be the cause of an outbreak of 162 hepatitis-A virus ( "HAV") infections in ten western states ("subject outbreak"). At all times relevant to this action, Costco distributed and

sold the "Townsend Farms Organic Anti-Oxidant Blend" at its retail stores, which are located throughout the western United States, including in the State of California.

12. **TOWNSEND FARMS, INC.:** The defendant Townsend Farms, Inc. ("Townsend Farms") is an Oregon corporation that manufactures, distributes, and sells a variety of fresh and frozen fruit products, including the "Townsend Farms Organic Anti-Oxidant Blend" product that was determined to be the cause of the subject outbreak. At all times relevant to this action, the defendant manufactured, distributed, and sold the "Townsend Farms Organic Anti-Oxidant Blend" to Costco for sale at its retail store locations, including in the State of California.

13. **PURELY POMEGRANATE INC.:** The defendant, Purely Pomegranate, Inc. ("Purely Pomegranate") is a California corporation that brokers, manufactures, distributes, and sells premium fruit products, including individually quick-frozen (IQF) pomegranate arils (often referred to as seeds). At all times relevant to this action, Purely Pomegranate conducted business operations in Dana Point, California, the processing and IQF organic pomegranate arils for Townsend Farms to use in the manufacture of "Townsend Farms Organic Antioxidant Blend," which, as previously noted, was determined to be the cause of an outbreak of at least 162 HAV illnesses in ten states.

14. **FALLON TRADING CO., INC.:** The defendant, Fallon Trading Co., Inc., ("Fallon Trading") is a Pennsylvania corporation that imports, distributes, and sells pomegranate products, including pomegranate arils, to companies throughout the United States. At all times relevant to this action, Fallon Trading carried on at its business location in Green Lane, Pennsylvania, the import, manufacture, distribution, or sale of pomegranate arils, including those sold to the defendant Purely Pomegranate that ultimately were included in the "Townsend Farms Organic Anti-Oxidant Blend" that caused the subject outbreak.

15. **UNITED JUICE CORP.:** The defendant, United Juice Corporation, ("United Juice") is a New Jersey corporation that imports, distributes, and sells pomegranate products, including pomegranate arils, to companies throughout the United States. At all times relevant to this action, United Juice carried on at its business location in Rochelle Park, New Jersey, the import, manufacture, distribution, or sale of pomegranate arils, including those sold to the defendant Fallon Trading that ultimately were included in the "Townsend Farms Organic Anti-Oxidant Blend" that

|

caused the subject outbreak.

## JURISDICTION AND VENUE

17.     The defendants have each engaged in substantial, continuous, and systematic contacts within the State of California, purposefully directing their activities towards California, including the placement of their goods into the stream of commerce with the intent and expectation that they will be purchased by consumers in California, and this litigation arises out of those activities; and venue is proper in California because the facts giving rise to the claims of the named-plaintiff Jacob Petersen, and all those similarly situated, arose in California as a result of injuries suffered there.

18.     The defendant Purely Pomegranate, upon its removal of this action to the United States District Court for the District of California, asserts the California District Court has removal jurisdiction over this matter pursuant to 28 U.S.C. §§ 1441(b) and 1332(a), an assertion with which plaintiffs do not concede, but otherwise have elected to not dispute.

19.     Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## NATURE OF THE ACTION

20.     This is a class action lawsuit brought on behalf of each of the plaintiffs named above ("named-plaintiffs"), and all persons similarly-situated ("class members") who live in a "represented state." For purposes of this action, a represented state is a state where one or more named plaintiffs resided at the time of the injury.[1]

21.     The named-plaintiffs and class members allege injury as a result of actual exposure, or the imminent and real risk of having been exposed, to the hepatitis-A virus ("HAV") in the "Townsend Farms Organic Anti-Oxidant Blend" that was subject to a recall announced in a press release that the defendant Townsend Farms issued on June 4, 2013. The FDA had sought the recall

---

[1]     The "represented states" are as follows, with the class representatives identified in parentheses: Arizona (Gayle Prather and Chris Mason), California (Jacob Petersen), Colorado (Suzanne Faber), Hawaii (Jenabe and Motoko Caldwell), Idaho (Leslie Lee), Nevada (Thomas Fiore), New Mexico (Anthony McConaghy), Oregon (Leslie Straka), and Washington (Jay and Frances Sewards).

THIRD AMENDED COMPLAINT                                          Case No. SA CV-13-01292
                                                                DOC (JCGx)

of the product because of the risk of HAV infection created by the fact that the consumption of the recalled product had caused an HAV outbreak. According to Townsend Farms, the product-recall was "because [the Product] has the potential to be contaminated with HAV, based on an ongoing epidemiological and traceback investigation by the FDA and the CDC of an illness outbreak." *See* http://www.townsendfarms.com/ (checked June 9, 2013). Because of the imminent and real risk of being infected as a result of having consumed the recalled-product, or having been exposed by intimate contact with someone actually infected by consumption of the recalled-product, the named-plaintiffs and class members took the medically-reasonable steps recommended by public health agencies—i.e., to obtain a hepatitis-A vaccination or IG-shot—to avoid falling ill with HAV.

22.      **Class Definition**: This class action is brought on behalf of persons (1) residing in one of the represented states, (2) who at the direction of public health agencies or their doctor, received a vaccination against HAV—*i.e.*, HAV-vaccine, or a prophylactic dose of immune globulin (IG-shot), as a result of  either (a) their exposure to HAV through consumption of recalled product, or (b) exposure to, or intimately-close proximity to persons infected with HAV as a result of consuming the recalled product.  The vast majority of those who received HAV-vaccine or IG-shots were, at the time, residents of California.  The class does not include those persons who contracted HAV.

## CLASS ACTION ALLEGATIONS

23.      This action is brought as a class action, pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of all persons who fit the Class Definition.

24.      The named-plaintiffs do not yet know the precise size of the class because this information remains confidential and within the exclusive control of the applicable state and regional health departments and districts, and Costco stores.  Nonetheless, the named-plaintiffs understand and believe that the recalled product was distributed to Costco stores and subsequently sold to consumers in the represented states during the first several months of 2013 up to the date that the outbreak linked to the recalled-product was announced on May 31, 2013. Based on the geographic distribution and sale of the product that caused the subject outbreak, and the scope of the subsequent

7

product recall, the number of potential class members likely exceeds 20,000.

25.     As the recalled-product was distributed and sold in high volume, over several months, and over a multistate region, joinder is impracticable.  Nevertheless, notice of this class action to each potential respective class member can be accomplished once the respective individual class is certified, because the identity of potential class members is known by state, regional, and other public health organizations that can issue notification to potential class members, and because Costco stores are in possession of a list of all individuals who purchased the recalled-product.

26.     There are numerous questions of law and fact that are common to the respective class members, including but not limited to:

(a)     Whether the "Townsend Farms Organic Anti-Oxidant Blend" that was subject to a recall because public health officials had linked the consumption of the recalled-product to more than one-hundred and sixty persons with confirmed HAV infections;

(b)     Whether there was an outbreak of HAV infections linked to the consumption of the recalled product as proven by both epidemiological and traceback investigations performed by the CDC and other public health agencies;

(c)     Whether public health agencies directed those who had consumed the recalled product to obtain either the HAV-vaccine or an IG-shot to prevent HAV infection;

(d)     Whether Townsend Farms agreed to a FDA-recall of the Product and notified those who had consumed the recalled product to not eat the product because it was not safe to eat or would put anyone consuming the product at risk of HAV infection;

(e)     Whether a person who had already consumed the recalled product acted in a reasonable and foreseeable manner in following the direction of public health agencies, or direction of their doctor, in obtaining the HAV-vaccine or an IG-shot;

(f)     Whether ready-to-eat frozen fruit products, like the recalled-products, is, as a matter of law, defective or otherwise unreasonably dangerous beyond what would be expected by

8

the ordinary consumer when products sharing the same Lot Codes are epidemiologically confirmed by public health officials to have been the cause of an HAV-outbreak due to contamination;

(g)     Whether ready-to-eat frozen fruit products, like the recalled-products, is, as a matter of law, defective or otherwise unreasonably dangerous beyond what would be expected by the ordinary consumer when subject to FDA-recall, and when CDC, other public health agencies, and the defendants Costco and Townsend Farms advised consumer to not eat the product because to do so would be to risk HAV infection;

(h)     Whether ready-to-eat frozen fruit products, like the recalled product, is, as a matter of law, defective or otherwise unreasonably dangerous beyond what would be expected by the ordinary consumer when subject to FDA recall as a result of confirmation that products sharing the same Lot Codes were contaminated with HAV, that these same Lot Codes were subject to FDA recall, and public health officials directed the public to not consume the product because of the risk of HAV infection resulting from such consumption;

(i)     Whether the sellers of the recalled product, or contaminated ingredients used to make the recalled product, are strictly liable to those who purchased the recalled product and, as a direct and proximate result, received the HAV-vaccine or an IG-shot at the direction of public health officials to prevent HAV infection;

(j)     Whether the defendants Costco and Townsend Farms breached express and implied warranties by their respective sale of the recalled products;

(k)     Whether the sellers of the recalled products, or contaminated ingredients used to make the recalled-product, are liable to the named-plaintiffs and class members due to negligence in the import, manufacture, distribution or sale of food that was actually or potentially contaminated with HAV and thus subject to FDA recall;

(l)     Whether the sellers of the recalled product, or contaminated ingredients used to make the recalled-product, are liable to named-plaintiffs and class members for the negligent

9

infliction of emotional distress for causing the impact or exposure to the recalled product, thereby causing the need for persons so impacted or exposed to obtain the HAV-vaccine or an IG-shot as a medically reasonable means of preventing infection;

(m)     Whether it was reasonably foreseeable that the sale of a food product that was contaminated or potentially contaminated with HAV, and thus subject to FDA recall, would cause those who had consumed the product to take medically reasonable steps to avoid infection; and

(n)     Whether it was reasonably foreseeable that the sale of a food product that was contaminated or potentially contaminated with HAV would cause those who had consumed the product to suffer emotional distress, concern, and worry both in the short period prior to taking the medically reasonable steps to avoid infection and for the short period after while waiting to see if the steps had been successful in preventing infection;

27.     Common questions of law and fact predominate over any questions affecting only individual class members. More specifically, whether the recalled product was adulterated is decided with reference to federal law as to all claims, while a significant majority of all claims are governed by California law, given that Purely Pomegranate is a California Corporation, and the more than half of all class-members are residents of California. Those class members of the eight other represented states present no novel issues of liability, with allegations of defect and injury identical as between all class members, and are easily manageable by use of a limited number of state subclasses. There is, similarly, no significant conflicts between the laws of the represented states, meaning that the liability to the named-plaintiffs and class members will be determined based on essentially identical legal principles. Neither are there individualized issues of proof or variation in the nature or extent of the injuries alleged, with such HAV-claims having been resolved on a class-basis many times before.

28.     The claims of the named-plaintiffs are typical of the claims of all class members, as set forth in the Class Definition above.  The damages and relief sought by these named-plaintiffs are also common to the class members, being akin to product-warranty type claims where involving the

same product, the same defect, the same alleged injury, and seeking the same damages, which are all primarily economic in nature—*e.g.*, reimbursement for shot-related costs.

29.     The named-plaintiffs will fairly and adequately represent and protect the interests of the class, and there are no identifiable conflicts with any other potential class member.

30.     The named-plaintiffs have retained competent counsel, who are experienced in foodborne illness litigation and who have extensive experience with class action litigation.  The counsel for the named-plaintiffs –William D. Marler, Esq. and the Seattle, Washington law firm of Marler Clark–has successfully represented a significant numbers of class-claimants who recovered damages as a result of alleged HAV-exposure and the need for prophylactic vaccinations, including the representation of: (a) more than 1,500 individuals in a class action related to an HAV outbreak at the D'Angelo's in Swansea, Massachusetts in 2001; (b) approximately 1,300 persons as part of a class action on behalf of persons who received IG shots due to an HAV outbreak in June and July 2000 in Spokane, Washington, which was associated with food served at a Carl's Jr. fast food restaurant there; (c) approximately 9,000 persons who received IG shots due to an outbreak of HAV at a Chi-Chi's restaurant near Pittsburgh, Pennsylvania in 2003; (d) approximately 3,800 persons as part of a class action on behalf of persons who received IG shots due to an HAV exposure in June 2004 at a Friendly's restaurant in Arlington, Massachusetts; (e) approximately 850 persons as part of a class action on behalf of persons who received IG shots due to an HAV exposure at a Quizno's in Boston, Massachusetts in 2004; (f) over 3,000 persons who received IG shots due to potential HAV exposure in January 2007 at a Houlihan's restaurant in Geneva, Illinois; (g)  more than 5,000 persons who were required to get vaccinations against HAV following exposure at a McDonald's restaurant in Milan, Illinois in 2009; (g) over 3,000 persons who received HAV vaccines in 2011 due to HAV-exposure at a Fayetteville, North Carolina Olive Garden; and (h) an estimated 1,200 person shot-class linked to HAV-exposure in 2014 caused by an infected employee at a Papa John's restaurant in Charlottesville, North Carolina.  Marler Clark also has extensive experience representing victims

THIRD AMENDED COMPLAINT

who developed HAV acute illnesses.

31.     The named-plaintiffs are unaware of any possible difficulty in the management of this litigation that would prevent it from being maintained as a class action.  The class action mechanism is superior to other alternatives, if any exist, for the fair adjudication of the controversy. Because the damages suffered by each class member is relatively small, easily documented, and not subject to any significant variation, class adjudication is superior and outweighs each member's interest in controlling prosecution of separate actions. Indeed, in the absence of class adjudication, most, if not all, class members would be left without reasonable means of compensation.

32.     The identity of potential class members can be ascertained from the various state and regional health agencies that have administered vaccinations or IG shots, or who have been informed of such vaccination or IG shots by either patient or provider report, and also from Costco stores, which stores are in possession of lists identifying all people who have purchased the Product.

33.     In the absence of a class action, individual litigation of these claims will be unreasonably expensive in light of the probable damages that might be recovered, and will unreasonably burden the courts of this state and others, and will waste important judicial resources.

34.     In the absence of a class action, individual litigation will also waste money that would otherwise be available to compensate these persons who were potentially exposed to infected persons or contaminated food, and accordingly needed treatment.

35.     In the absence of a class action, persons who might otherwise possess a remedy, and might otherwise be able to seek judicial relief, may be left without a reasonable means to obtain justice and full compensation for the injuries they sustained.

36.     In the absence of a class action, and in the absence of prompt notification of all potential class members, any minor claims arising from this HAV exposure/outbreak, and the related vaccinations and IG shots, may languish, and may do so without the statute of limitations beginning to run until each minor turns eighteen.  As a result, litigation related to this potential outbreak could

THIRD AMENDED COMPLAINT

Case No. SA CV-13-01292
DOC (JCGx)

be in the courts, intermittently, and without coordination, for the next twenty years.  In contrast, a class action lawsuit will allow for the efficient and expeditious adjudication of all such claims.

## **OTHER FACTUAL ALLEGATIONS**

37.     As of October 28, 2013, at least 162 people were infected by HAV and became ill due to consumption of the recalled product.  The illnesses thus far have been reported to have occurred in residents of at least ten states:  Arizona (23), California (79), Colorado (28), Hawaii (8), New Hampshire (1), New Jersey (1), New Mexico (11), Nevada (6), Utah (3), and Wisconsin (2).  There were 71 hospitalizations and no known deaths.

38.     The defendants Purely Pomegranate, Fallon Trading and United Juice variously and respectively imported, manufactured, distributed, or sold the HAV-contaminated pomegranate arils that the defendant Townsend Farms used to manufacture the recalled products. In turn, the defendant Townsend Farms sold the recalled product to Costco for retail sale in its stores, which is where the recalled product that caused injury to the named-plaintiffs and class members was purchased.

39.     On or about the date of the public announcement about the subject outbreak, May 31, 2013, Costco removed the recalled-product from its store shelves. Further, and as alleged above, the defendant Townsend Farms—at the FDA's request—announced the subject recall.

40.     In the Updated Release that Townsend Farms issued, and that the FDA posted on its website, the source of the contamination was clearly stated:

> Townsend Farms is providing this Update #3 after the FDA and the CDC confirmed that the epidemiological evidence supports a clear association between the hepatitis A illness outbreak and one lot of organic pomegranate seeds used in the Frozen Organic Antioxidant blend subject to the voluntary recall. The implicated lot of pomegranate seeds were imported from Turkey through Goknur and Purely Pomegranate, Inc.

41.     HAV, which causes severe gastrointestinal illness and, in severe cases, liver failure and death, incubates in the human body for between 15 and 50 days.  Therefore, public health officials across the country continued to monitor for additional HAV infections and illnesses occurring as part of the subject outbreak.

13

42.     The CDC and other state and regional public health agencies advised any purchasers of the recalled-product to refrain from consuming the Product, and to obtain HAV vaccination, or a prophylactic dose of IG.  More specifically, the CDC issued a recommendation that anyone "hav[ing] eaten the Townsend Farms Organic Antioxidant Blend frozen berry and pomegranate mix…within the last 14 days, you need to get the hepatitis-A vaccination." Public health officials also recommended that people exposed to an individual known to have become ill as part of the subject outbreak should also obtain the HAV-vaccine or an IG-shot.

43.     It is estimated that more than 20,000 people sought treatment after being exposed or potentially exposed to HAV as a result of consuming the recalled product or as  result of exposure to an someone infected as a result of such consumption.

44.     Of those named-plaintiffs and class members who consumed the recalled product, such consumption occurred before its association with the subject outbreak was known, and before Costco stores removed the recalled-product from store shelves.

## STRICT LIABILITY

45.     By this reference, the preceding paragraphs of this complaint are fully incorporated as if each and every one of these paragraphs was set forth here in its entirety.

46.     The defendants imported, manufactured, distributed, or sold the recalled-product, or contaminated ingredients used to make the recalled product, thus causing the subject outbreak, as described previously, and thus also causing the named-plaintiffs and class members injury.

47.     The recalled products were ready-to-eat, intended for consumption without further preparation, cooking, or other step that might eliminate the presence of pathogens. A ready-to-eat product contaminated with HAV is adulterated within the meaning of Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 342(a), as well as being defective, unreasonably dangerous, and not fit for human consumption.  Further, food products subject to FDA recall are neither fit for human consumption, nor safe to the extent expected by a reasonable consumer, when such recall is a result

14

of the recalled products being contaminated with HAV and shown to have caused an outbreak.

48.     Neither the recalled product, nor pomegranate arils used to manufacture the recalled product, conformed to the specifications or performance standards of each defendant, nor did they conform to the express and implied warranties of each defendant.

49.     The products that are alleged here to have caused injury to the named-plaintiffs and class members were subject to FDA-recall because certain product-lots were confirmed to have been contaminated with HAV, and confirmed HAV-infections were linked to the consumption of these same product-lots. But for the recalled products of these same product-lots, the named-plaintiffs and class members would not have needed to obtain either the HAV-vaccine or an IG-shot and, thus, would have suffered no injury and damages, including the economic costs of the needed medical treatment, severe emotional distress caused by the reasonable fear and worry about infection, and the pain and discomfort associated with the vaccination.

50.     Both the pomegranate arils used to make the recalled product, and the recalled product, were expected by the defendants to reach the consumers, and be consumed by them, without any substantial change. The named-plaintiffs and class member consumed the recalled product, having received the same without any substantial change having occurred, and they used the recalled product in the manner expected and intended, including when they consumed it.

51.     The named-plaintiffs and the class-members suffered the injuries here alleged as a direct and proximate result of the consumption of the recalled product, which was both defective and unreasonably dangerous, or as a result of intimate exposure to the one who consumed such product and was infected with HAV as a result. Accordingly, the defendants are strictly liable to the named-plaintiffs and to all class members.

## NEGLIGENCE  (including NEGLIGENCE PER SE)

52.     By this reference, the preceding paragraphs of this complaint are fully incorporated as if each and every one of these paragraphs was set forth here in its entirety.

53.     The defendants were negligent in the import, manufacture, distribution, or sale of the recalled-product, or contaminated ingredients used to make the recalled product, thus causing the subject outbreak and recall, and thus also causing the named-plaintiffs and class members injury.

54.     More specifically, the defendants each owed a duty to properly supervise, train, and monitor their employees, or the employees of their agents or subcontractors, in the preparation of the product or product-ingredients it sold, doing so to ensure compliance with the each defendant's own specifications and performance standards, as well as to ensure compliance with all applicable health regulations, including the FDA's Good Manufacturing Practices regulations, 21 C.F.R. Part 110, Subparts (A)-(G). The defendants breached all of these duties, and the named plaintiffs and class members were each injured as a direct and proximate result of such breaches.

55.     The defendants each additionally owed a duty to comply with statutory and regulatory provisions that pertained or applied to the import, manufacture, distribution, storage, or sale of their product or product-ingredients, including, but not limited to, the Federal Food, Drug, and Cosmetics Act, § 402(a), as codified at 21 U.S.C. § 342(a), which bans the manufacture, sale and distribution of any "adulterated" food, and California's Sherman Food, Drug, and Cosmetic Act, CA Health & Safety Code § 110545, which imposes an identical ban.  Under both Acts, food is adulterated if it contains a "poisonous or deleterious substance which may render it injurious to health." HAV is such a substance. Thus, by its import, manufacture, distribution, storage, or sale of the their product or product-ingredients, the defendants breached their statutory and regulatory duties, and the named plaintiffs and class members were each injured as a direct and proximate result of such breaches.

56.     The Defendants were negligent in importing, manufacturing, distributing or selling a food Product actually/potentially contaminated with HAV.  The Defendants' negligent acts and omissions included, but were not limited to:

(a)     Failure to prevent the contamination of the product or product-ingredients by HAV, including the failure to implement or non-negligently perform inspection and monitoring of

the product or product-ingredients such that its adulterated condition would be discovered prior to its sale or distribution to the public for human consumption.

       (b)    Failure to properly supervise, train, and monitor their employees, or the employees of their agents or subcontractors, on how to ensure the import, manufacture, distribution or sale of food Product free of adulteration by potentially lethal pathogens.

57.    The federal and state food safety regulations applicable here, and as set forth above, establish a positive and definite standard of care in the import, manufacture, distribution or sale of food, and the violation of these regulations constitutes negligence *per se*.

58.    The named-plaintiffs and class members were in the class of persons intended to be protected by these statutes and regulations, and were injured as the direct and proximate result of the Defendants' violation of applicable federal, state and local food safety regulations.

59.    The defendants breached the aforementioned duties as alleged above, which breach constituted the proximate cause of injury to the named-plaintiffs and class members.

## BREACH OF WARRANTIES (as to Townsend Farms and Costco only)

60.    By this reference, the preceding paragraphs of this complaint are fully incorporated as if each and every one of these paragraphs was set forth here in its entirety.

61.    The defendant Costco and Townsend Farms each sold the recalled product, with Townsend Farms selling the recalled product to Costco, and Costco selling the recalled products to the named-plaintiffs and class-members.

62.    By each of the defendant's sale of the recalled product, the defendants expressly and impliedly warranted that the products sold were fit for human consumption as a ready-to-eat product.

63.    Because food that is contaminated with HAV, or is otherwise subject to FDA-recall as a result of being linked to a confirmed outbreak of HAV infections, is neither safe, nor fit for human consumption, the defendants Costco and Townsend Farms each breached their respective warranties by respective sales of the recalled product to the named-plaintiffs and class-members who

consumed the recalled product. These defendants also breached the same warranties to named-plaintiffs and class members who, as members of households of purchasers of the recalled product, were exposed to HAV as a result of the purchasers being infected as a result of consuming the recalled product.

64.     The named-plaintiffs and class members suffered personal injury as a direct result of the defendants Costco and Townsend Farms having breached warranties, as set forth above.

## DAMAGES

65.     By each of the defendant's sale of the recalled product, the defendants expressly and impliedly warranted that the products sold were fit for human consumption as a ready-to-eat product.

66.     The named-plaintiffs and class members have suffered economic and non-economic damages, including, but not limited to: (a) costs incurred as a result of taking medically-reasonable steps to avoid being infected with HAV after exposure to the recalled product or a person who was infected as a result of consuming the recalled product—*e.g.*, medical expenses, documented lost-wages, and related out-of-pocket costs; (b) non-economic damages for the physical pain caused by the HAV-vaccination or IG-shot; and (c) non-economic damages, in a sum certain amount, for the emotional distress, anxiety, and related reasonable fear of HAV infection for the limited period between learning of need to take the recommended, medically-reasonably steps to avoid infection.

## PRAYER FOR RELIEF

WHEREFORE, the named-plaintiffs pray for the following relief:

(1)     That the Court certifies this class action under Rule 23(b)(3), Fed.R.Civ.P. or any other appropriate provision of Federal Rule 23, and appoint counsel herein as class counsel;

(2)     That the Court award named-plaintiffs and class members judgment against the defendants in such sums as shall be determined to fully and fairly compensate the damages alleged above, or in an amount to be proven at trial; and

(3)     That the Court award named-plaintiffs and class members such other and further

18

relief as it deems necessary and proper in the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the named-plaintiffs and class members hereby demand trial by jury on all issues so triable.

Dated:  September 5, 2014

GORDON & HOLMES

_/s/ Frederic L. Gordon_____
Frederic L. Gordon

KEENEY, WAITE and STEVENS

_/s/ Richard R. Waite_____
Richard R. Waite

MARLER CLARK

_/s/ William D. Marler_____
William D. Marler

Attorneys for named-plaintiffs

19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of September, 2014, I electronically transmitted the foregoing document to the U.S. District Court Clerk's Office using the Court's CM/ECF System for filing and transmittal of a Notice of Electronic Filing, thereby serving all counsel of record in this matter.

By:  /s/ William D. Marler

Richard Ramsey Waite
Kenney Waite and Stevens
427 South Cedros Avenue, Suite 101
Solano Beach, CA  92075
rwaite@keenlaw.com

Mary M. Best
Kenney Waite and Stevens
402 West Broadway, Suite 1820
San Diego, CA 92101
mbest@keenlaw.com

Frederic Levi Gordon
Gordon and Holmes
223 West Date Street
San Diego, CA 92101-3571
fgordon@gordonandholmes.com

**Attorneys for Plaintiff:  Jacob Petersen**

Guy R. Gruppie
Eric P. Weiss
Gina E. Och
Murchison & Cumming LLP
801 South Grand Avenue, 9th Floor
Los Angeles, CA  90017-4624
ggruppie@murchisonlaw.com
eweiss@murchisonlaw.com
goch@murchisonlaw.com

**Counsel for Defendants:  Townsend Farms, Incorporated**

THIRD AMENDED COMPLAINT

Case No. SA CV-13-01292
DOC (JCGx)

1  Richard John Zuromski, Jr.
   Troy M. Yoshino
2  G. David Godwin
   Rodney L. Eshelman
3  Robert Alfred Binion
4  Gretchen A. Ramos
   Carroll, Burdick & McDonough LLP
5  44 Montgomery Street, Suite 400
6  San Francisco, CA 94104
   rzuromski@cbmlaw.com
7  tyoshino@cbmlaw.com
   dgodwin@cbmlaw.com
8  reshelman@cbmlaw.com
9  rbinion@cbmlaw.com
   gramos@cbmlaw.com
10
11 **Counsel for Defendants:  Purely Pomegranate, Incorporated**

12 Carmine Joseph Pearl, II
   Willis DePasquale, LLP
13 725 West Town and Country Road, Suite 550
   Orange, CA 92868
14 cpearl@wdlegal.net
15
   **Counsel for Defendants:  Fallon Trading Company, Incorporated**
16
17 Goli Akhavan
   Eric Y. Kizirian
18 Cary L. Wood
   Lewis Brisbois Bisgaard and Smith LLP
19 221 North Figuerora Street, Suite 1200
   Los Angeles, CA  90012
20 goli.akhavan@lewisbrisbois.com
21 eric.kizirian@lewisbrisbois.com
   cary.wood@lewisbrisbois.com
22
23 **Counsel for Defendants:  United Juice Corp.**

24

25

26

27

28

21