Frederic L. Gordon, Esq. SBN 98994
GORDON & HOLMES
223 W. Date Street
San Diego, CA 92101-3571
Phone: 619-696-0444 / Fax: 619-696-1144
Email: fgordon@gordonandholmes.com

Richard R. Waite, Esq. SBN 097942
KEENEY, WAITE and STEVENS
427 South Cedros Avenue, Suite 101
Solana Beach, CA 92075
Phone: 858-523-2130 / Fax: 858-5232135
Email: rwaite@keenlaw.com

William D. Marler, Esq.
Denis Stearns, Esq.
*Admitted Pro Hac Vice*
MARLER CLARK. L.L.P., P.S.
1301 Second Avenue, Suite 2800
Seattle, WA 98101
Phone: 206-346-1888 / Fax: 206-346-1898
Email: bmarler@marlerclark.com
Email: dstearns@marlerclark.com
Attorneys for Named-plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| JACOB PETERSEN, GAYLE PRATHER, CHRISTOPHER MASON, SUZANNE FABER, JENABE CALDWELL, MOTOKO CALDWELL, LESLIE LEE, ANTHONY MCCONAGHY, THOMAS FIORE, LESLIE STRAKA, JAY SEWARDS, FRANCES SEWARD, individually, and others similarly situated,<br><br>Named-plaintiffs,<br><br>v.<br><br>COSTCO WHOLESALE CO., INC. a Washington corporation doing business in California, TOWNSEND FARMS, INC., an Oregon corporation doing business in California, PURELY POMEGRANATE, INC., a California corporation, FALLON TRADING CO., INC., a Pennsylvania | Case No.: SA CV-13-01292 DOC (JCGx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 23(A) AND 23(B)(3)**<br><br>**IMAGED FILE**<br><br>Date:          August 24, 2015<br>Time:          8:30 AM<br>Courtroom:          9D |

i

corporation doing business in California, and UNITED JUICE CORP., a New Jersey corporation doing business in California,

Defendants.

Assigned To:     Hon. David O. Carter

Trial Date:      August 14, 2016, 8:30 AM

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................1

II.    PROPOSED CLASS DEFINITION, INCLUDING SUBCLASSES ............................2

III.   BRIEF STATEMENT OF RELEVANT FACTS ........................................4

IV.    THE PROPOSED CLASS DEFINITION SATISFIES THE REQUIREMENT THAT MEMBERSHIP IN THE CLASS BE OBJECTIVELY ASCERTAINABLE ...............12

V.     CLASS CERTIFICATION IS APPROPRIATE—ALL REQUIREMENTS ARE MET. ...................................................................................................13

       A.    The Proposed Class Satisfies the Requirements of Rule 23(a) ......................................................................................14

             1.    Numerosity—Rule 23(a)(1)...................................14

             2.    Commonality—Rule 23(a)(2)..................................16

             3.    Typicality—Rule 23(a)(3) .......................................17

             4.    Adequacy of Representation—Rule 23(a)(4) .........19

       B.    Rule 23(B)(3)—Predominance and Superiority ................20

             1.    Common Questions of Fact and Law Predominate Over Questions Affecting Only Individual Members ..................................................20

             2.    Class Action is a Superior Method of Adjudicating the Dispute...........................................24

VI.    CONCLUSION .....................................................................................25

ii

# TABLE OF AUTHORITIES

**FEDERAL CASE LAW:**

## *U.S. Supreme Court Cases*

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) ...................14

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013)....................................................... 14, 20

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. __, 131 S.Ct. 2541, 2556 (2011)...... 2, 16, 17, 18, 20

## *Ninth Circuit Cases*

*Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013)...............................16 n. 3

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ................................................ 14, 18

*Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330 (9th Cir. 1977) ............................15

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)............................... 16, 18, 19, 20

*Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)........................................ 14, 18

*Jimenez v. Allstate Inc. Co.*, 765 F.3d 1161 (9th Cir. 2014) .................................................16 n. 33

*Mazza v. Am. Honda Motor Co. Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).............. 15, 16 n. 33,

*Stockwell v. San Francisco*, 749 F.3d 1107(9th Cir. 2014)....................................................16 n. 33

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)........................................24

*Wolin Jguar Land Rover North Am., LLC*, 617 F. 3d 1168, 1175 (9th Cir. 2010)...................25

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189, amended by 273 F.3d 1266 (9th Cir. 2001) .................................................................................................................................................21

## *District Court Cases*

*Astiana v. Kashi Co.*, 291 F.R.D. 493 (S.D. Cal. 2013) ..........................................................13

*Californians for Disability Rights, Inc. v. California Dept. of Transp.*, 249 F.R.D. 334 (N.D. Cal. 2008)....................................................................................................................................................19

*Holt v. Globalinx Pet LLC*, 2013 U.S. Dist. LEXIS 108009 (July 30, 2013) .........................21

*Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 617 (C.D. Cal. 2008) ................................15

*Ries v. Ariz. Bevs. United States Llc, Hornell Brewing Co.*, 287 F.R.D. 523 (N.D. Cal. 2012) ..12

*Shepard v. Lowe's HIW*, No. C 12-3893, 2013 U.S. Dist. LEXIS 118419 (N.D. Cal. Aug. 19, 2013) .............................................................................................................................12

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 473 (C.D. Cal. 2012) ............................. ............................................................................................ 15, 16, 17, 19 n. 25, 25

*Wolph v. Acer Am. Corp.*, 272 F.R.D. 477 (N.D. Cal. 2011) ....................................................12

**STATE CASE LAW:**

*Ball v. Prentice, 162 Ariz.* 150, 781 P.2d 628, 630 (Ariz. Ct. App. 1989) ......................22 n. 39

*Brokenshire v. Rivas & Rivas*, 142 Ore. App. 555, 560, 922 P.2d 696, 698 (Or. Ct. App. 1996) ...............................................................................................................................23 n. 44

*Bylsma v. Burger King Corp.*, 176 Wn.2d 555, 562, 293 P.3d 1168, 1171 (2013) ............21 n. 6

*Carter v. Brighton Ford, Inc.,* 251 P.3d 1179 (Colo. Ct. App. 2010) ..........................................16

*Camacho v. Honda Motor Co. Ltd.*, 741 P.2d 1240, 1247 (Colo. 1987) ........................24 n. 47

*Dart v. Wiebe Mfg., Inc.*, 147 Ariz. 242, 244, 709 P.2d 876, 878 (1985) ................................23

Fyssakis v. Knight Equip. Corp., 108 Nev. 212, 826 P.2d 570 (1992) ......................23 n. 42

*Gau v. Smitty's Super Valu,* 183 Ariz. 107, 901 P.2d 455 (Ariz. Ct. App. 1995) ..........22 n. 39

*Ginnis v. Mapes Hotel Corp.*, 86 Nev. 408, 470 P.2d 135 (1970) ...................23 n. 42, 24 n. 46

*Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 27 Cal. Rptr. 697, 377 P.2d 897 (1963) .......................................................................22 n. 40

*Grubb v. Do It Best Corp.*, 279 P.3d 626, 627-28 (Ariz. Ct. App. 2012) ......................22 n. 39

*Kerins v. Hartley,* 27 Cal. App. 4th 1062, 1073, 33 Cal. Rptr. 2d 172 (1994) ..............22 n. 40

*Lewis v. American Hoist & Derrick Co.*, 20 Cal. App. 3d 570, 586, 97 Cal. Rptr. 798, 808 (Cal. App. 2d Dist. 1971) ............................................................................................ 24 n. 46

*McCathern v. Toyota Motor Corp.*, 332 Ore. 59, 77, 23 P.3d 320, (2001) ......................24 n. 46

*Macy's California v. Superior Court,* 41 Cal. App. 4th 744, 48 Cal. Rptr. 2d 496 *(*1995) ............
..................................................................................................................................22 n. 40

*Madrid v. Lincoln County Med. Ctr.,* 121 N.M. 133, 143, 909 P.2d 14 (1995)  .............23 n. 43

*Neal v. Neal,* 125 Idaho 627, 635, 873 P.2d 881 (1993) ................................................21 n. 37

*Nielsen v. Am. Honda Motor Co., Inc.,* 92 Haw. 180, 190 n. 14, 989 P.2d 264, 274 (Ct. App.
1999)......................................................................................................................22 n. 41

*Ontai v. Straub Clinic & Hosp.*, 66 Haw. 237, 241, 659 P.2d 734, 740 (1983) 22, n. 41, 24 n. 46

*Roes v. FHP, Inc.,* 91 Haw. 470, 477, 985 P.2d 661 (1999)............................................22 n. 41

*Rojas v. Lindsay Mfg. Co.*, 108 Idaho 590, 591, 701 P.2d 210, 211 (1985)....................23 n. 45

*Sadler v. PacifiCare of Nevada, Inc.,* 340 P.3d 1264 (Nev. 2014*)* .....................................23 n. 42

*Salazar v. American Sterilizer Co.,* 5 P.3d 357, 369 (Colo. App. 2000)...........................22 n. 38

*Sequoia Mfg. Co. v. Halec Constr. Co.,* 117 Ariz. 11, 570 P.2d 782 (Ct. App. 1977)......22 n. 39

*Spectron Dev. Lab. v. Am. Hollow Boring Co.*, 123 N.M. 170, 174, 936 P.2d 852 857, (N.M. Ct.
App. 1997) ............................................................................................................24 n. 47

*Stang v. Hertz Corp.,* 83 N.M. 730, 497 P.2d 732 (N.M. 1972)  ................................. 23 n. 43

*Stewart v. Budget Rent-A-Car Corp.,* 52 Haw. 71, 75, 470 P.2d 240, 243 (1970) ..........22 n. 39

STATUTES:

ARIZ. REV. STAT. § 12-681(9) ........................................................................ 21 n. 37, 22 n. 39

COLO. REV. STAT. § 13-21-4012

IDAHO CODE § 6-1407(1) ............................................................................................. 19, 21

REV. CODE. WASH. 7.72.030(2)(a) .................................................................21 n. 36, 24 n. 47

REV. CODE WASH. § 7.72.040(1)(a)-(c) .......................................................................21 n. 36

**COURT RULES:**

Fed. R. Civ. P. 23.................................................................................................. 12, 14

Fed. R. Civ. P. 23(a)(1)......................................................................................14-15

Fed. R. Civ. P. 23(a)(2).............................................................................................15

Fed. R. Civ. P. 23(a)(3).......................................................................................17-18

Fed. R. Civ. P. 23(a)(4).............................................................................................19

Fed. R. Civ. P. 23(b)(3).............................................................................................20

**OTHER AUTHORITIES CITED:**

Denis Stearns, PROSSER'S BAIT-AND-SWITCH: HOW FOOD SAFETY WAS SACRIFICED IN THE
BATTLE FOR TORT'S EMPIRE,  2014 Nev. L.J. 106 (2014)..........................................22 n. 39

## I. INTRODUCTION

As consumer class actions go, the present one is relatively straightforward. Each of the plaintiffs—individually, and on behalf of those similarly situated—asserted a product liability claim. Simply put, the plaintiffs allege that each suffered injuries as the direct and proximate result of consuming a product that was "defective, unreasonably dangerous, and not fit for human consumption." THIRD AMENDED COMPLAINT (Dkt. 51-1), ¶ 47, at 14.

There is a single product involved: Townsend Farms Organic Anti-Oxidant Blend, a frozen berry mix that the defendant Townsend Farms manufactured and the defendant Costco sold. This product was subject to a recall when public health officials—primarily the Centers for Disease Control and Prevention ("CDC") and United States Food and Drug Administration ("FDA")—linked the product to a multistate outbreak of hepatitis A infections. Ultimately, 165 people fell seriously ill as a result consuming the recalled product and being infected. To prevent more infections, the defendants urged the thousands of people who had consumed the product to contact a doctor or local health department obtain a vaccination—a worrisome and painful step, but a step that both CDC and FDA recommended as a needed preventative measure to address the dangerous, product-related exposure to the hepatitis A virus.

Each of the named-plaintiffs in the present case obtained a vaccination within 14 days of consuming the recalled product, which is the time-period that CDC and FDA recommended. As a result of obtaining the vaccination, none of these plaintiffs went on to develop a full-blown or symptomatic hepatitis A infection, because the inactivated antigens in the vaccine caused (as intended) a protective immune-response. As such, the plaintiffs were able to avoid the more serious and life-threatening injuries that those who developed hepatitis suffered. Nonetheless,

the plaintiffs still suffered injuries for which this class action seeks fair compensation from the defendants. As this Court has ruled in rejecting the argument that the injuries alleged were not sufficient for standing purpose "the statements of Townsend Farms and the CDC (and other agencies) establish both that the harm alleged is not self-inflicted and that the injury is fairly traceable to the Product."[1]

Accordingly, the question now before the Court is whether the plaintiffs can meet their burden of demonstrating that the proposed class satisfies the requirements of Rule 23 and thus is appropriate for certification.  The plaintiffs respectfully submit that the answer to is yes. The Rule 23(a) requirements of numerosity, typicality, and adequacy of representation are, in the present case, not reasonably subject to dispute. The requirement of commonality can also be readily met give that, "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. __, 131 S.Ct. 2541, 2556 (2011). And, here, common questions suitable for class-wide determination abound, such as the question of whether a recalled product linked to a hepatitis A outbreak is defective and not reasonably safe if purchasers were told not eat the product and to discard it. There is also the question of whether the sellers of such a product are strictly liable for the injuries caused by consumption of the product. Commonality is therefore not a problem.

With the requirements of Rule 23(a) met, the plaintiffs then need only to show that the requirements of Rule 23(b)(3)—predominance and superiority—can be met as well. And here, again, the requirements are easily met, with superiority not in question. As for predominance, the common questions represent the entirety of the liability aspect of this case, allowing for the

---

[1]      Order Granting Motion to Dismiss and Denying (As Moot) Motion to Strike and Motion for Leave to File Third Amended Complaint (Dkt. 70), SACV 13-1292-DOC (JCGx), at 5 (Aug. 27, 2014). The Court also concluded that the "injury is sufficiently concrete and actual." *Id.*

liability of the defendants to be decided in one fell swoop, in a single adjudication. Moreover, the question of damages is not one that requires highly individualized inquiry or that presents defenses unique to a potential class member. Each class member suffered an injury that is so similar it could be characterized as fungible: an exposure to hepatitis A, a short period of feared illness, and the pain and anxiety caused by a vaccination. Thus, if a trial actually proves necessary (because no settlement occurs), the fact-finder can, based on hearing the facts related to the named-plaintiffs, decide the amount of compensation due to each class member, in addition to what is also due as compensation for the costs of the vaccination and related medical treatment.

For the reasons summarized above, the plaintiffs therefore respectfully request the Court order the certification of this action for class-treatment, certifying an opt-out class under Rule 23(b)(3). There will certainly be no difficulties related to notice, given that the defendants have already communicated directly with all putative class members.

## II.  PROPOSED CLASS DEFINITION, INCLUDING SUB-CLASSES

The class that the plaintiffs propose for certification is defined as follows: All  residents of Arizona, California, Colorado, Idaho, Hawaii, Nevada, New Mexico,  Oregon, or Washington who: (1) consumed the recalled product—that is, Townsend Farms Organic Anti-Oxidant Blend frozen berry-mix purchased at Costco and subject to the recall that was announced in press releases that the Townsend Farms issued on June 4 and 28, 2013, and (2) received preventive medical treatment, including an injection of hepatitis-A vaccine or immune globulin, blood tests, and other associated costs.[2]

---

[2]    It should be noted that the definition proposed here differs from the definition set forth in the Third Amended Complaint, ¶ 22 (Dkt. 51-1), at 7. As one recent decision certifying a class explained:
It is an unremarkable feature of class actions that class definitions are refined to reflect the

The class does not include persons infected with HAV as a result of consuming the recalled product, or persons who obtained preventive medical treatment as a result of exposure to, or intimately-close proximity to, these infected persons. The class also does not include any employees of Costco, Townsend Farms, or other defendants.

For purposes of trial management, and to address the sole material difference in the law of certain states,[3] the plaintiffs propose the following two sub-classes:

**Townsend Farms Only Sub-Class:** All persons meeting the class-definition who are residents of Colorado, Idaho, and Washington and who, as a result of such residency, have claims against Townsend Farms only.

**Costco/Townsend Farms Sub-Class:** All persons meeting the class-definition who are residents of Arizona, California, Hawaii, Nevada, New Mexico, and Oregon who, as a result of such residency, have claims against Costco and Townsend Farms.

## III.   BRIEF STATEMENT OF RELEVANT FACTS

The facts most relevant to this motion and the Court's decision on certification are largely beyond dispute. Although the plaintiffs are still awaiting answers to interrogatories from

---

developing realities of a given suit. Courts, including those in the Ninth Circuit, regularly allow class definitions to be adjusted over the course of a lawsuit. *See, e.g., Zeisel v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2011 U.S. Dist. LEXIS 60608, 2011 WL 2221113, *2, *6 (N.D. Cal. June 7, 2011); *In Re Hulu Privacy Litig.*, No. C 11-3764, 2014 U.S. Dist. LEXIS 83661, 2014 WL 2758598, at *14 (N.D. Cal. June 16, 2014) ("definitional flaws 'can and often should be resolved by refining the class definition rather than by flatly denying class certification on that basis'") (quoting *Messner v. Northshore Univ. Health System*, 669 F.3d 802, 825 (7th Cir. 2012)). *Brown v. Hain Celestial Group, Inc.*, 2014 U.S. Dist. LEXIS 162038, *17 (N.D. Cal. Nov. 18, 2014). As the *Hain* court further noted: "Judicial efficiency is best served by addressing now the classes that motion proposes." *Id.* at *17-*18.

[3]   This sole difference involves whether a non-manufacturing product seller is subject to liability for the sale of a defective product. This difference will be explained at Section IV.B.1, *infra*, at 20-25.

---

the defendants Costco and Townsend,[4]  information and documents provided to-date suffice to demonstrate the factual grounds to certify this action for class-treatment. Accordingly, the brief statement of facts that follows is based on the defendants' answers to interrogatories, documents that the defendants produced, and public records related to the official investigation of the single-injury causing event from which this action arose.

Specifically, this action arose from an outbreak of hepatitis A infections that CDC ultimately linked to the consumption of "Townsend Farms Organic Anti-Oxidant Blend" frozen berry-mix sold only at Costco stores. This outbreak was the subject of a definitive report jointly authored by the public health officials who investigated the outbreak.[5] The CDC also published a report,[6] and findings included the following:

- 165 people were confirmed to have become ill from hepatitis A linked to pomegranate arils contained in 'Townsend Farms Organic Antioxidant Blend' in 10 states: Arizona (23), California (79), Colorado (28), Hawaii (8), New Hampshire (1), New Jersey (1), New Mexico (11), Nevada (6), Utah (3), and Wisconsin (2) …
- Ages ranged from 1 – 84 years;
- 94 (58%) of those ill were between 40 – 64 years of age.
- 11 children age 18 or under were also ill. None were previously vaccinated.
- Illness onset dates ranged from 3/31/2013 – 7/26/2013
- 71 (44%) ill people were hospitalized, and no deaths were reported
- All ill people who reported eating this product purchased it from Costco markets; however, the product was also sold at Harris Teeter stores. No ill people were identified that bought the product at Harris Teeter.

---

[4]     There was for a time a dispute as to whether the plaintiffs had propounded more than the limit of interrogatories allowed; however, the parties were able to resolve the dispute, and the defendants have agreed to respond to all of the remaining interrogatories and requests for production.

[5]     See *Outbreak of Hepatitis A Associated with Frozen Pomegranate Arils Imported from Turkey—Multiple U.S. States*, published in THE LANCET INFECTIOUS DISEASES, Volume 14, Issue 10, 976-81. A copy of the report is available online at: http://www.cdc.gov/hepatitis/outbreaks/2013/a1b-03-31/pdfs/hepatitisaoutbreak2013.pdf  (last checked Aug. 21, 2015). For the convenience of the Court, a copy of the report is attached to the Declaration of Denis Stearns ("Stearns Decl.") as **Exhibit No. 1**.

[6]     *See* Multistate outbreak of hepatitis A virus infections linked to pomegranate seeds from Turkey (Final Update), Sept. 15, 2014, http://www.cdc.gov/hepatitis/outbreaks/2013/a1b-03-31/index.html

According to Costco, it "learned of the subject outbreak on or about May 29, 2013, from the Centers for Disease Control ("CDC").[7] In response, Costco states that it:

> immediately took necessary action to remove the subject product from all Costco retail stores. The product removed from the retail stores on or about May 29, 2013, and or about May 30, 2013. In addition, [Costco] immediately notified its members of the outbreak, and offered to provide a refund for the product and the necessary vaccinations free of charge.

*Id.* By letter dated May 29, 2013, Costco's Director of Food Safety & Corporate Quality Assurance notified all Warehouse Managers to "check your current inventory of Item 595820—Townsend Farms Organic Antioxidant Blend."[8] They were also instructed to "Wrap and mark product 'Do Not Sell'."

Two days later, on May 31, Costco Vice-President, Craig Wilson, communicated to warehouse managers that "CDC will announce an outbreak of hepatitis A in 5 states—Colorado, New Mexico, Nevada, Arizona, and California," and that the outbreak was "potentially associated with item #595820, the 'Townsend Farms Organic Anti-Oxidant Blend' a frozen berry blend."[9] That same day, managers were also provided with "talking points" because the stores were "getting flooded with member calls."[10] The talking points told managers that "If the member has any product they should not consume it but should discard it." *Id.* They were also told (repeating the CDC's guidance):

---

[7]    Costco Answer to Interrogatory No. 1, at 4, Stearns Decl., **Exhibit No 2**.
[8]    Christine Summers Letter of May 29, 2013, Stearns Decl., **Exhibit No. 3**.
[9]    Craig Wilson Letter of May 31, 2013, Stearns Decl., **Exhibit No. 4**.
[10]   Christine Summers Letter of May 31, 2013, Stearns Decl., **Exhibit No. 5**. This letter also "attached the CDC and FDA guidance documents" related to the outbreak. *Id.* Among other things, the FDA guidance stated that "CDC recommends that consumers do not eat 'Townsend Farms Organic Anti-Oxidant Blend' and discard any remaining product from your freezers." *Id.* (Costco Doc. # 00008). The document also stated that "Hepatitis A vaccination can prevent illness if given within two weeks of exposure to the contaminated product." *Id.*

> If the member has not been vaccinated and has consumed the product in the last two weeks[,] they should contact their health care provider to find out if they should be vaccinated.

*Id.* Similar "talking points" were attached to a communication that same day from Craig Wilson, a communication that directed warehouse managers to "post the attached CDC Hepatitis A guidance for our members."[11]

In addition to advising purchasers to "throw away any Townsend Farms Organic Anti-oxidant Blend frozen berry product you have in your freezer or refrigerator," the "Hepatitis A Outbreak—Talking Points" stated that "It is important for people to take steps to protect their health." *Id.* The specific advice given was as follows:

- If you have eaten any Townsend Farms Organic Anti-oxidant Blend in the last two weeks, talk to a health care provider about getting the hepatitis A vaccine.
- Most children are vaccinated against hepatitis A, so they already are protected. If you have had the vaccine, you are protected.
- It is important for persons who have serious medical conditions, especially liver disease or diseases affecting the immune system, to get vaccinated.

You should talk with a health care provider if you have eaten the frozen berry product.

- If you do not get the hepatitis A vaccine within two weeks of eating the frozen berry product hepatitis A is not likely to be prevented. Hepatitis A vaccine may prevent disease—only if given within a two week time period of eating the frozen product.
- If you ate the frozen berry product more than two weeks ago, look for symptoms of hepatitis. Not everyone gets symptoms.

Townsend Farms announced the first part of the recall on June 3, 2013, stating the recall was "based on an ongoing epidemiological and traceback investigation by the FDA and CDC of

---

[11]     Craig Wilson Letter of May 31, 2013 (Costco Doc # 00013, 00014) and "Hepatitis A Outbreak—Talking Points" Attachment (Costco Doc. # 00015), Stearns Decl., **Exhibit No. 6**. The managers were also directed to post CDC and FDA web addresses related to the outbreak, with Mr. Wilson stating that "Good information is contained in these web sites and will be useful." *Id.* The sites customers were directed to can be found at http://www.cdc.gov/hepatitis/outbreaks/2013/a1b-03-31/ and http://www.fda.gov/Food/RecallsOutbreaksEmergencies/Outbreaks/ucm354698.htm

an illness outbreak."[12] That same day, Costco circulated a copy of the press release to

Warehouse Managers with instructions to "Please Post For Our Members."[13] Under the

subheading "Member Vaccinations," the communication also stated:

> Please remember that at this point in time the CDC/FDA guidance for our members is to have anyone who has eaten the item in the last 14 days to see their personal care provider or their local health department to confirm that they are a candidate for a Hepatitis A vaccination. Assure that an incident report is completed on the members' behalf and submitted as normal so we can expedite any necessary reimbursements. Our supplier is, of course, covering costs associated with vaccinations.

*Id.* at 1-2.

In further response to the outbreak, and based on continued investigation into the source

of contamination, Townsend Farms subsequently expanded the recall to include more

production dates, but not any different products sold at Costco.[14] As confirmed by the Affidavit

of Margaret Townsend, Vice-President of Townsend Farms, the Organic Antioxidant Blend

could also be identified by a single lot-number, 496, and "the code is checked during the

production shift to ensure that lot code is correct."[15] Accordingly, the  product could be easily

identified; it involving a single identically-labeled product and lot-code sold only at Costco. *Id.*

For purposes of communicating with purchasers of the recalled product, Costco "utilized

its customer database to notify potential Costco customers by telephone and mail regarding the

potential outbreak and potential recall."[16]  The script that was used in a follow-up call to Costco

---

[12] *See* Townsend Farms & FDA Press Release, June 3, 2013, Stearns Decl., **Exhibit No. 7**.
[13] Costco Communication of June 3, 2013, Stearns Decl., **Exhibit No. 8**.
[14] *See* Press Release, June 28, 2013, at http://www.fda.gov/Safety/Recalls/ucm359140.htm A copy of the FDA-posted Press Release is also attached to the Declaration of Denis Stearns at **Exhibit No. 9**. Townsend Farms "Product Withdrawal & Recall Report" and "Recall Hazard/Risk Analysis" also confirm the nature and extent of recall-actions. *See* Stearns Decl., **Exhibits No. 10 and 11**.
[15] Margaret Townsend Affidavit, at 4, Stearns Decl., **Exhibit No. 12**.
[16] Costco Answer to Interrogatory No. 3, at 6; Stearns Decl., **Exhibit No. 2**.

customers was included in an internal communication to Costco warehouse managers.[17] In addition to informing customers of the "formal recall of the Townsend Farms Anti-oxidant blend," the call told Costco customers, "If you have eaten the product in the last 10 days the CDC and FDA advice is to visit your personal health care provider or your local health department to receive a Hepatitis A vaccination." *Id.* Customers were also told "Costco will reimburse the cost of your vaccination." *Id.*

Explaining the letter about the outbreak and the need for vaccinations, Costco explained that it was mailed to "all Costco members who had purchased the product, advising them of the recall of the subject product, and providing instructions as to refunds and vaccinations." *Id.* In addition, the letter told purchasers:

> If you have eaten the product in the last 10 days the CDC & FDA advice is to visit your personal health care provider or your local health department to receive a Hepatitis A Vaccination.[18]

The members were also told: "Beginning tomorrow, June 6, 2013 vaccinations will also be available at your local Costco pharmacy at no charge." *Id.* The letter promised again that "Costco will reimburse the cost of your vaccination." *Id.*

On June 6, in an internal communication regarding the offer to reimburse for all vaccinations not obtained free at its pharmacy, Costco told its warehouse managers that:

> You don't need to key an incident report for the refund of the hepatitis A vaccination and the associated lab work. You do need a copy of the members [*sic*] receipt along with their membership number.[19]

In another communication that same day, Craig Wilson informed managers that he had "just

---

[17]   Craig Wilson Letter of June 5, 2013, Stearns Decl., **Exhibit No. 13**.
[18]   Costco Food Safety Update, June 5, 2013, Stearns Decl., **Exhibit No. 14**.
[19]   June 6, 2013 Costco Communication, Stearns Decl., **Exhibit No. 15**.

completed a conference call with the CDC in Atlanta and the state health departments for all the states that are involved with the hepatitis situation."[20] Mr. Wilson also advised that local health departments might be contacting Costco stores to offer assistance in the vaccination efforts, "providing vaccines…if you are low, helping set up clinics or any other appropriate assistance we may need during this situation." *Id.*

Costco ultimately "administered a total of approximately 10,316 vaccinations for free at various stores and on various dates."[21] For its part, Townsend Farms "was kept informed of Costco's efforts through communications with Craig Wilson, at Costco."[22] Notably, Costco also sent its customers a reminder of the need for a "booster vaccination approximately 6 months from your initial vaccination."[23] Warehouse managers were also advised that the "[m]embers that chose to get vaccinated at their health care provider will be coming to get a refund for their booster vaccination."[24]

In addition to its own letter, Costco forwarded a letter from Townsend Farms to all customers who had purchased the recalled product.[25]  After advising of the recall and providing information about the hepatitis A virus, the letter included a "What you can do" section with a bullet-point that read "If you have consumed the product within the past 14 days, get the vaccination." *Id.* In describing its communication with Costco members, Townsend Farms summarized this step like this:

> In cooperation with the Food and Drug Administration and the Centers for Disease

---

[20]   Craig Wilson Letter of June 6, 2013, Stearns Decl., **Exhibit No. 16**.
[21]   Costco Answer to Interrogatory No. 5, at 6; Stearns Decl., **Exhibit No. 2**.
[22]   Townsend Farms Answer to Interrogatory No. 5, at 9; Stearns Decl., **Exhibit No. 17**.
[23]   Craig Wilson Letter of December 5, 2013, Stearns Decl., **Exhibit No. 18**.
[24]   Craig Wilson Letter of December 16, 2013, Stearns Decl., **Exhibit No. 19**.
[25]   Townsend Farms Letter dated 06/05/13, Stearns Decl., **Exhibit No. 20**.

Control, TFI issued notices to be shared with Costco customers, with the information concerning the product being recalled, the reasons for the recall, the prophylactic steps consumers could take, the manner in which consumers could identify the product, and the contact information for consumers should they have any questions.[26]

It was further explained that the letter "stated that a Hepatitis A vaccination can prevent illness if given with two weeks of exposure to contaminated food," and that the decision to send the letter was made "in consultation and cooperation with federal, state and local public health authorities."[27] Finally, the information in the letter about vaccinations was provided by the CDC and FDA, thus the defendants passed along the advice of public health officials.[28]

Finally, with regard to the costs that it incurred for providing its customers with no-cost vaccinations, Costco "issued credit memoranda documenting the costs of the vaccinations as credits against any amounts owed by Costco to Townsend Farms and Townsend Farms was responsible for all payments of all such costs." Townsend Farms has confirmed this, stating:

> TFI was informed by Costco that Costco would pay for the cost of its customers' vaccinations for Hepatitis A by offering the customers vaccinations free of charge. Costco in turn informed TFI that TFI would be responsible for all such payments, and that Costco would be issuing credit memoranda documenting the costs of the vaccinations as a credit against amounts owed to Costco to TFI on any product.[29]

---

[26]    Townsend Farms Answer to Interrogatory No. 3; Stearns Decl., **Exhibit No. 17**.

[27]    *Id.*, Townsend Farms Answer No. 4, at 8. In its own answer to a similar interrogatory, Costco explained that it had "communicated with Townsend Farms, the FDA, and CDC and other health organizations regarding the subject outbreak to ensure that [its] members were informed of the outbreak and were provided instructions regarding necessary medical care and vaccinations." Costco Answer No. 9, at 6; Stearns Decl., **Exhibit No. 2**.

[28]    Townsend Farms Answer No. 11, at 13, Stearns Decl., **Exhibit No. 17**. Costco also "cooperated with Townsend Farms, the FDA, the CDC, and other health organizations regarding the subject outbreak to ensure that [Costco's] members were informed of the outbreak and were provided instructions regarding necessary medical care and vaccinations." Costco Answer No. 9, at 10; Stearns Decl., **Exhibit No. 2**. Costco also issued a "Health Alert," citing CDC recommendations, explaining "what you need to do if you purchased this frozen berry product." Health Alert to Costco Customers, Stearns Decl., **Exhibit No. 21**. Not only did it tell customers to "not eat this product," and to "[d]iscard it in the garbage or return it to Costco for a refund," the Alert said "hepatitis A vaccine can lower your risk of getting sick <u>when given with 14 days of eating contaminated food</u>." *Id.* (emphasis in original).

[29]    Townsend Farms Answer to Interrogatory No. 6, at 10; Stearns Decl., **Exhibit No. 17**.

In sum, both Costco and Townsend Farms told purchasers of the recalled product that it posed a significant safety risk due to hepatitis A contamination, and such product should not be consumed. Purchasers who had consumed the recalled product were also told to obtain "necessary medical care and vaccinations," with Costco providing the "necessary vaccinations" free of charge to prevent infection. Finally, the advice given to consumers originated with the FDA, the CDC, and other public health organizations. As a result, those who obtained a vaccination after eating the recalled product did so at the express urgings of the defendants, based on recommendations of public health officials.

## IV.   THE PROPOSED CLASS-DEFINITION SATISFIES THE REQUIREMENT THAT MEMBERSHIP IN THE CLASS BE OBJECTIVELY ASCERTAINABLE.

"Although there is no explicit requirement concerning the class definition in FRCP 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011) (internal quotation omitted). Consequently, to be certified, a class should be sufficiently definite by reference to objective criteria such "that it is administratively feasible to determine whether a particular person is a class member." *Shepard v. Lowe's HIW*, No. C 12-3893, 2013 U.S. Dist. LEXIS 118419, *2 (N.D. Cal. Aug. 19, 2013). "There is no requirement that the identity of the class members . . . be known at the time of certification." *Ries v. Ariz. Bevs. United States Llc, Hornell Brewing Co.*, 287 F.R.D. 523, 536 (N.D. Cal. 2012); *Wolph*, 272 F.R.D. at 482 (same).

In the present case, the proposed class definition provides the "objective criteria" needed to easily determine whether a particular individual is a class-member. Not only are all purchasers of the recalled product readily ascertainable as Costco customers who must hand over a

membership card for electronic-swiping at the time of purchase, Costco has maintained a database of all customer purchases. That database is what allowed Costco, as part of its response to the outbreak, to directly contact each purchaser by both phone and mail. In a typical consumer class action, a defendant argues that the requirement of ascertainability cannot be met because it "does not have records of consumer purchases, and potential class members will likely lack proof of their purchases." *See, e.g., Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013) (rejecting argument class not ascertainable given possible need "to pursue proof individual to each class member" for purchases). In the present case, though, Costco has purchase records.

In addition to purchase records, the identities of the 10, 316 people who obtained hepatitis-A vaccinations at a Costco pharmacy are also already known.  Indeed, Costco sent a reminder-letter to each of these people about the need for a "booster vaccination approximately 6 months from your initial vaccination."[30] The fact that a huge majority of class members has been both identified *and* contacted already conclusively shows that the requirement of ascertainability is here met.

## V.    CLASS CERTIFICATION IS APPROPRIATE—ALL REQUIREMENTS ARE MET.

The plaintiffs seek certification of a class that includes all persons who consumed a frozen berry-mix recalled because of its link to having caused at least 165 people to be infected with hepatitis A, a product that the defendant told its purchasers to not eat and to discard to prevent infection. The defendants also urged those who had consumed the contaminated product within the past 14 days to obtain a vaccination prevent infection. The present action seeks compensation for all those persons injured by the consumption of the contaminated

---

[30]     Craig Wilson Letter of December 5, 2013, Stearns Decl., **Exhibit No. 18**.

berry-mix and the unwanted vaccination. Because there exists a sufficient basis—both factual and legal—for this Court to certify the class and subclasses that are here proposed, the plaintiffs respectfully request that the Court certify this action for class treatment.

### A.     The Proposed Class Satisfies the Requirements of Rule 23(a).

Certification of a class is proper once the trial court is satisfied, "after a rigorous analysis," that a proposed class meets all requirements of Rule 23. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). A party seeking certification must therefore demonstrate facts sufficient to satisfy the Rule 23(a) requirements of (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Id.*; *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). In analyzing whether the requirements of Rule 23(a) are met, a court's "analysis will frequently entail 'overlap with the merits of the plaintiff's underlying claim.'" *Comcast,* 133 S. Ct. at 1432 (quoting *Wal-Mart*, 131 S. Ct. at 2551. Nonetheless:

> Rule 23 grants no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent — but only to the extent — that they are relevant for determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (holding that court may examine merits "only inasmuch as it must to determine whether common questions exist; not to determine whether class members would actually prevail on the merits").

As shall be demonstrated in the subsections that follow, the four requirements of Rule 23(a) can be met, meaning that the proposed class and subclasses can be certified.

### 1.     Numerosity — Rule 23(a)(1)

There is no dispute that the proposed class (as divided into two sub-classes) is "so

numerous that joinder of all members is impracticable." FED.R.CIV.P. 23(a)(1). There is, of course, no absolute minimum class size for establishing numerosity, but courts have held that classes as small as forty satisfy the numerosity demand. *Delarosa v. Boiron*, 275 F.R.D. 582, 587 (C.D. Cal. 2011).  Indeed, "[a]s a general rule, classes of forty or more are considered sufficiently numerous." *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 617 (C.D. Cal. 2008) reversed on other grounds by *Mazza v. Am. Honda Motor Co. Inc.*, 666 F.3d 581, 588 (9th Cir. 2012); *see also Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 473 (C.D. Cal. 2012) ("A proposed class of at least forty members presumptively satisfies the numerosity requirement."). Finally, in deciding on numerosity, the Court may consider reasonable inferences drawn from the facts before it. *See Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 n. 5 (9th Cir. 1977).

In the present case, the number of class members who received vaccinations at a Costco pharmacy is 9,674, a number that Costco itself provided to the plaintiffs in the response to a subpoena.[31] Moreover, according to the peer-reviewed outbreak report, "[s]tate and local health departments gave post-exposure prophylaxis to thousands of persons."[32]  Consequently, there is no question that the requirement of numerosity can be, and is, satisfied given the number of persons who meet the class definition. The two subclasses also easily satisfy numerosity with the Townsend-Farms-Only subclass having at least 1,631 members (counting only Costco-

---

[31]     Subpoena with attached Costco Spreadsheet, "Hep A Vaccines Administered By Costco through 9/23/13," Stearns Decl., Exhibit No. 22. Of this number, 5,315 of the class members vaccinated were residents of California, meaning that even if only a California class was certified, the number of class members would likely exceed 7,000 if the persons who obtained vaccinations at places other than at a Costco pharmacy are added in. As for the other states where class members reside, Costco administered the following numbers of shots: Arizona (872), Colorado (709), Hawaii (954), Idaho (104), New Mexico (126), Nevada (322), Oregon (454), and Washington (818). Although Costco administered a total of 10,316 vaccinations, this higher number includes people from states other than the ones just listed.

[32]     Outbreak Report at 12, Stearns Decl., **Exhibit No. 1**.

administered vaccinations), and the other subclass having at least 8,043 class members. Accordingly, it is difficult to imagine that the defendants would dispute numerosity, and on what possible basis they could do so.

### 2. Commonality — Rule 23(a)(2)

To be certified, the proponents of certification must show "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The plaintiffs need not show that each class member's factual and legal issues are identical: "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies.'" *Tait,* 289 F.R.D. at 474 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)). As the Supreme Court has explained, "for purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart,* 131 S.Ct. at 2556. Consequently, the common question "must be of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2551. "What matters. . . is not the raising of common 'questions' — even in droves — but rather the capacity of a classwide proceeding to generate common answers apt to drive resolution of the litigation." *Id.* (quotation omitted).[33]

Commonality exists here. Several significant questions of fact and law common to the class, and that possess the capacity for common answers that with drive resolution of the

---

[33]     A*ccord Stockwell v. San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014) (following *Wal-Mart v. Dukes* and noting the Ninth Circuit clarified "Rule 23(a)(2) requires…'a single *significant* question of law or fact.' *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (emphasis in original) (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012)"); *Jimenez v. Allstate Inc. Co.*, 765 F.3d 1161 (9th Cir. 2014) explaining that the common question must be the "glue necessary to say that examination of the all class members' claims for relief with product a common answer to the crucial questions raised by the plaintiffs' complaint") (quotations from *Wal-Mart* omitted).

litigation. Specifically, there are the core questions, based on common proof, of:

- whether Townsend Farms frozen berry-mix is defective based on the facts that the CDC and others linked consumption of the product to a multistate outbreak of Hepatitis-A infections, and that the defendants urgently informed purchasers to not eat the product, but to instead discard it or return it for a refund;
- whether the recalled product is the cause of injury, where those who consumed the product within a defined time-period were instructed by the defendants (passing along the recommendations of the CDC) to be vaccinated so as to prevent being infected with Hepatitis-A and thus suffering more serious injury;
- whether those who consumed the product and followed CDC recommendations took medically reasonable steps to avoid more serious injury; and
- whether those who consumed the recalled product reasonably feared infection, based on the information provided by the defendants and public health officials.

There is also the corollary question of whether any reasonable person would knowingly consume frozen berries contaminated with hepatitis-A, or whether a reasonable person would choose to become infected with a potentially deadly disease to avoid a lesser injury of a painful vaccination. Of course, the defendants have a right to argue otherwise, but the argument to the contrary is still addressed to the class as a whole, and not individual class members. As such, the arguments and answers to these questions drive will resolution of the litigation because the answers establish the liability of the defendants to all class members—and do so "in one stroke." *Wal-Mart,* 131 S.Ct. at 2551. Indeed, it was for substantially same reasons that this Court certified the class in *Tait,* and in doing so concluded that: "Because the claims of all prospective class members involve the same alleged defect and found in [products] containing the same key components, they are susceptible to common proof sufficient to meet the commonality requirement of Rule 23(a)(2)." *Tait,* 289, F.R. D. at 474. The same conclusion is more than justified here.

### 3. Typicality — Rule 23(a)(3)

Rule 23(a)(3) requires that "the claims or defenses of the class representatives [be] typical

of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). Under this rule's "permissive

standards," claims of a representative are typical if "reasonably co-extensive with those of absent

class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1011. Moreover,

typicality refers to the nature of the claim or defense, "not to the specific facts from which it

arose or the relief sought." *Ellis*, 657 F.3d at 984. Indeed:

> The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.

*Hanon*, 976 F.2d at 508 (quotation omitted).

The claims of the named plaintiffs are typical of the claims of the class as a whole

because each named plaintiff consumed the recalled product and, as a result, obtained a

vaccination to prevent infection and further injury.[34] Accordingly, the plaintiffs have here done

more than merely allege that they "suffered a violation of the same provision of law." *Wal-Mart*,

131 S. Ct. at 2551. Moreover, the conduct of the defendants that is here challenged—the

manufacture and sale of a food product contaminated with hepatitis-A — was not unique to any

plaintiff. The plaintiffs were each injured by identical products, of the same manufacturer and

lot, defective in an identical way, and sold at Costco only.  As a result, the plaintiffs claim injury

from the "same course of conduct." *Hanon*, 976 F.2d at 508. There is, moreover, no real dispute

that the named plaintiffs are members of the class they would represent.  The same is true of the

subclasses with a plaintiff who is a resident of each of the states comprising each subclass.[35]

---

[34]    Declarations for each of the class representatives have been filed in support of the motion for certification. For the convenience of the Court, and for its ease of reference, a chart has been created that summarizes the information contained in the Declarations. *See* Summary Chart, **Exhibit A**.

[35]    The one exception to this statement is with regard to Anthony McConaghy who, unfortunately, has passed away, and Motoko and Jenabe Caldwell, who are elderly and have become too infirm to act

Indeed, there are no claims that the plaintiffs bring that class members cannot bring, or vice versa. Consequently, claims of the plaintiffs are not only "reasonably co-extensive" with all class members, they are in this case identical.  The requirement of typicality is thus met.

### 4.    Adequacy of Representation— Rule 23(a)(4)

In addition to showing numerosity, commonality, and typicality, certification also requires that "the representative parties will fairly and adequately protect the interests of the class." FED.R.CIV.P. 23(a)(4). This requirement applies to both the class representative and class counsel and poses two questions:

> (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?

*Hanlon*, 150 F.3d at 1020. The adequacy of class counsel or the willingness of the named plaintiffs to vigorously prosecute the class's case has already been alleged, and has now been supported by the Declarations of William Marler and Denis Stearns. "Adequate representation is usually presumed in the absence of contrary evidence." *Californians for Disability Rights, Inc. v. California Dept. of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008). In light of this presumption, and barring contrary evidence or some demonstration of an ongoing dispute among the parties, the adequacy requirement should be deemed met.

### B.    RULE 23(B)(3) — PREDOMINANCE AND SUPERIORITY

---

as class representatives. Given the construction of the subclasses, and the substantial similarity of the laws within each group of states, it does not appear necessary to have a class representative for each one of the states, as was the case in *Tait*, where there were material differences in the laws of each state, thus necessitating state-specific subclasses. In any case, counsel for the plaintiffs has identified replacements to act as representatives of Hawaii and New Mexico class members, David Troutman (New Mexico), and Andrea Medrano (Hawaii). Accordingly, we ask that the Court grant leave to substitute these two individuals as class representatives. As this Court observed in *Tait*, a class can be certified "conditioned upon the substitution of another named plaintiff." *Tait*, 289 F.R.D. at 476 (quotation omitted).

In addition to fulfilling the four requirements of Rule 23(a), the proposed class must also meet at least one of the three requirements listed in Rule 23(b). *See Wal-Mart*, 131 S.Ct. at 2548. In the present case, the plaintiffs seek certification pursuant to Rule 23(b)(3), which allows certification so long as "the court finds the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3).

Because the plaintiffs can demonstrate—and, in fact, do so below—that the tests of predominance and superiority can both be met, the plaintiffs have satisfied all of the requirements for class certification. The motion for certification should thus be granted.

### 1. Common Questions of Fact and Law Predominate Over Questions Affecting Only Individual Members.

The predominance inquiry involves weighing and evaluating the common and individual issues in the case. *See Wal-Mart*, 131 S. Ct. at 2556. It involves the same principles that guide the Rule 23(a)(2) commonality analysis, but it "is even more demanding than Rule 23(a)." *Comcast*, 133 S. Ct. at 1432. The predominance inquiry "focuses on the relationship between the common and individual issues," *Hanlon*, 150 F.3d at 1022, and requires a court to weigh the common issues against the individual issues. *Wal-Mart*, 131 S. Ct. at 2556. Consequently, class certification under Rule 23(b)(3) is proper when common questions represent a significant portion of the case and can be resolved for all class members in a single adjudication. *Hanlon*, 150 F.3d at 1022.

The plaintiffs have alleged product liability claims against the defendants Costco and Townsend Farms and, in so doing, here readily admit that these causes of action are based on state statutes or common law. This admission does not, however, lead to the conclusion that

"material differences in state law across the jurisdictions covered by the class may 'compound

disparities' among class members from different states and reveal that a proposed class fails to

satisfy the predominance requirement." *Holt v. Globalinx Pet LLC*, 2014 U.S. Dist. LEXIS 11825,

2014 WL 347016 (C.D. Cal. Jan. 30, 2014) (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d

1180, 1189, amended by 273 F.3d 1266 (9th Cir. 2001)).

　　　　Unlike the nationwide class action in *Holt* that involved contaminated dog-treats, the

class that the plaintiffs propose for certification here involves only nine states and is premised

solely on the applicable product liability law of each state. Because there is great uniformity

among the states with regard to product liability claims, there is only a single material difference

with regard to the law of these states, a difference that is managed by the creation of two sub-

classes. Specifically, in Washington,[36] Idaho,[37] and Colorado[38] a non-manufacturing product

---

[36]　　　In Washington, with some exceptions that do not apply to the present case, "a product seller other than a manufacturer" can be held liable only for negligence, breach of express warranty, or intentional misrepresentation. REV. CODE WASH. § 7.72.040(1)(a)-(c). In contrast, manufacturers can be held strictly liable for the sale of products "not reasonably safe in construction." REV. CODE. WASH. 7.72.030(2). Washington product liability law allows for the recovery of emotional distress in the absence of physical injury "if the emotional response is a reasonable response and manifest by objective symptomatology." *Bylsma v. Burger King Corp.*, 176 Wn.2d 555, 562, 293 P.3d 1168, 1171 (2013) (allowing action under Washington Product Liability Act by person sold a burger that an employee has spit on).

[37]　　　In Idaho, and again with exceptions that do not apply here, product sellers, other than manufacturers, who neither warrant a product nor have a reasonable opportunity or expertise to perform an inspection of the product that would reveal a defect, are not liable for injuries caused by the product. Idaho Code Ann. § 6-1407(1). Although there is no published decision with regard to product liability, emotional distress resulting from the reasonable fear of contracting a disease constitutes a compensable injury in Idaho. *See Neal v. Neal*, 125 Idaho 627, 635, 873 P.2d 881 (1993) (holding that a claim was not actionable where reasonableness of fear could not be established).

[38]　　　In Colorado, there is a statute that provides that "[n]product liability action shall be commenced against any seller of a product unless the said seller is also the manufacturer of said product or the manufacturer of the part thereof giving rise to the product liability action." REV. STAT. ANN. § 13-21-4012; *see also Carter v. Brighton Ford, Inc.*, 251 P.3d 1179, 1187 (Colo. Ct. App. 2010) (holding that the statute was intended to "insulate sellers who did not manufacture a product from liability for harm caused by the product…"). In Colorado, plaintiffs are allowed to recover for the reasonable fear of disease caused by a defective product that causes exposure to a toxic substance. *See Salazar v. American*

seller cannot be held strictly liable for the sale of a defective product. Because Costco, as a non-manufacturing seller, would possess a unique defense against claims from residents of these three states, creating a subclass for these residents with claims asserted against Townsend Farms only, prevents there from being a material difference that might otherwise undermine predominance. Notwithstanding the use of a subclass, the facts needed to establish liability as among all class members remains the same—proof of defect. The only difference is that such proof establishes the liability of <u>both</u> defendants for residents of Arizona,[39] California,[40] Hawaii,[41] Nevada,[42] New Mexico,[43] and Oregon,[44] and only one defendant for the residents of

---

*Sterilizer Co.*, 5 P.3d 357, 369 (Colo. App. 2000) ("Reasonableness [of fear] is determined form all of the facts and circumstances present in evidence at trial.") (citing *Boryla v. Pash*, 937, P.2d 813 (Colo. App. 1996, *rev'd on other grounds*, 960 P.2d 123 (Colo. 1998)).

[39]    ARIZ. REV. STAT. § 12-681(9) broadly defining product seller; *see also Sequoia Mfg. Co. v. Halec Constr. Co., Inc.*, 117 Ariz. 11, 570 P.2d 782 (Ct. App. 1977) (applying strict liability to a product lessor). *Cf. Grubb v. Do It Best Corp.*, 279 P.3d 626, 627-28 (Ariz. Ct. App. 2012) (affirming grant of summary judgment for defendant that did not "participate significantly in the stream of commerce"). Arizona also allows for recovery of emotional distress damages in the absence of physical injury where there is a threat to the plaintiff's personal security. *Quinn v. Turner*, 155 Ariz. 225, 745 P.2d 972 (1987). *See also Ball v. Prentice*, 162 Ariz. 150, 781 P.2d 628, 630 (Ariz. Ct. App. 1989) (noting there is "little doubt" one can "recover damages for emotional distress…when one was physically involved in an accident and suffered some impact triggering the emotional responses"). *But see Gau v. Smitty's Super Va*lu, 183 Ariz. 107, 901 P.2d 455 (Ariz. Ct. App. 1995) (requiring physical injury where there is a lack of related medical treatment and distinguishing *Quinn* on those grounds).

[40]    In California, the first state to adopt strict liability, such liability extends to all those enterprises that place defective products in the stream of commerce. *Greenman v. Yuba Power Products, Inc.*, 59 Cal. 2d 57, 27 Cal. Rptr. 697 (1963) (adopting strict liability as had been developed in a long line of food cases). *See also, generally*, Denis Stearns, PROSSER'S BAIT-AND-SWITCH: HOW FOOD SAFETY WAS SACRIFICED IN THE BATTLE FOR TORT'S EMPIRE, 2014 Nev. L.J. 106 (2014) (discussing the development of strict liability in food cases). California also allows recovery based on the negligent exposure to infectious disease. *See, e.g., Macy's California, Inc. v. Superior Court*, 41 Cal. App. 4th 744, 48 Cal. Rptr. 2d 496 (1995) (recognizing right to recover for emotional distress caused by negligent exposure, even in the absence of a demonstrated "detrimental change to the body"). *See also Kerins v. Hartley*, 27 Cal. App. 4th 1062, 1073, 33 Cal. Rptr. 2d 172 (1994) (regarding fear of developing cancer due to exposure to a toxic substance).

[41]    In Hawaii, one can be held strictly liable so long as it is shown that you are in the business or selling or distributing such products. *Nielsen v. Am. Honda Motor Co., Inc.*, 92 Haw. 180, 190 n. 14, 989 P.2d 264, 274 (Ct. App. 1999) (citing  *Ontai v. Straub Clinic and Hospital, Inc.*, 66 Haw. 237, 242, 659 P.2d 734, 739 (1983); *Stewart v. Budget Rent-A-Car Corp.*, 52 Haw. 71, 75, 470 P.2d 240, 243 (1970). Hawaii also allows recovery of emotional distress damages in the absence of any physical manifestation of harm so

---

Washington, Idaho, and Colorado. In either subclass though, the proof required is the same, establishing liability class-wide, and showing common question of liability predominate here.

With regard to the proof of defect, there are no material differences as among the tests used, even if the language used to state the tests can vary in immaterial ways. For example, in Arizona, a product has a manufacturing defect if it "contains a danger which the manufacturer did not intend and the customer did not expect." *Dart v. Wiebe Mfg., Inc.*, 147 Ariz. 242, 244, 709 P.2d 876, 878 (1985)(citing *Brady v. Melody Homes Mfr.*, 121 Ariz. 253, 256, 589 P.2d 896, 899 (1978)).[45] In California, the test is stated differently, but requires the same kind of proof—that

---

long as that distress is within the range of that which would be experienced by a reasonable person under the same circumstances. *Roes v. FHP, Inc.*, 91 Haw. 470, 477, 985 P.2d 661 (1999) (addressing potential recovery for one allegedly exposed to HIV-tainted blood).

[42]    Nevada too applies Restatement 402A to impose liability for the manufacture, distribution, or sale of defective products that cause injury. *Ginnis v. Mapes Hotel Corp.*, 86 Nev. 408, 470 P.2d 135 (1970) (extending the doctrine of strict liability for beverages and food-stuffs to all kinds of products); *see also Fyssakis v. Knight Equip. Corp.*, 108 Nev. 212, 826 P.2d 570 (1992) (citing *Ginnis*, supra). The Nevada Supreme Court also recently held that a plaintiff can state a claim for negligence based on the need for medical treatment caused by potential exposure to Hepatitis C. *See Sadler v. PacifiCare of Nevada, I*nc., 340 P.3d 1264 (Nev. 2014) (recognizing a legal interest in avoiding need for medical tests).

[43]    New Mexico courts have adopted Restatement 402A thus holding anyone strictly liable how sold, leased, or otherwise placed a defective product in the stream of commerce. *Stang v. Hertz Corp.*, 83 N.M. 730, 497 P.2d 732 (N.M. 1972) (adopting Restatement 402A). New Mexico also recognizes a right of recovery in a plaintiff who has suffered emotional distress damages for fear of contracting AIDS or Hepatitis as the result of a defendant's negligent exposure of the plaintiff to HIV or Hepatitis. *Madrid v. Lincoln County Med. Ctr.*, 121 N.M. 133, 143, 909 P.2d 14 (1995) (allowing a plaintiff to recover for emotional distress damages caused when bloody samples that she was transporting splashed on her hands and elsewhere where she had unhealed paper cuts and the plaintiff did not have knowledge as to the infectious state of the samples).

[44]    In Oregon, a product liability action can be asserted against a manufacturer, distributor, seller or lessor for injury caused by a defective product. Or. Rev. Stat. § 30.900; *see also Brokenshire v. Rivas & Rivas*, 142 Ore. App. 555, 560, 922 P.2d 696, 698 (Or. Ct. App. 1996) (explaining that Oregon's codification of the law governing product liability actions extends strict liability to one who sells any product in a defective condition unreasonably dangerous to the user for any injury to the user, if the seller is in the business of selling that product).

[45]    *Accord Rojas v. Lindsay Mfg. Co.*, 108 Idaho 590, 591, 701 P.2d 210, 211 (1985) (affirming jury instruction as a proper statement of Idaho law—that is: "A product is in a defective condition unreasonably dangerous to person or property if it is more dangerous than would be expected by an ordinary person who may reasonably be expected to use it.").

---

is, proof that "establishes that the defect in the product made it unreasonably dangerous and unsafe for the general purpose for which it was designed and intended to be used." [46] And in Washington, which has a statute defining defect, the test is also such that the same proof would be required —that is, proof "the product deviated in some material way from the design specifications or performance standards…, or deviated in some material way from otherwise identical units of the same product line."[47] Therefore, regardless of the state law that applies, the manner in which the plaintiffs will be called upon to establish the liability is the same, requiring the same sort of proof, and capable of establishing liability on a class-wide basis. Consequently, for the class sought to be certified here, the requirement of predominance is met.

### 2.    Class Action is a Superior Method of Adjudicating the Dispute.

"Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Further, the superiority requirement is satisfied "[w]here recovery on an individual basis would be dwarfed by the cost of litigating on

---

[46]    *Lewis v. American Hoist & Derrick Co.*, 20 Cal. App. 3d 570, 586, 97 Cal. Rptr. 798, 808 (Cal. App. 2d Dist. 1971). *Accord Ginnis v. Mapes Hotel Corp.*, 86 Nev. at 413, 470 P.2d at 137 ("Although the definitions of the term 'defect' in the context of products liability law use varying language, all of them rest upon the common premise that those products are defective which are dangerous because they fail to perform in the manner reasonably to be expected in light of their nature and intended function."); *McCathern v. Toyota Motor Corp.*, 332 Ore. 59, 77, 23 P.3d 320, (2001) (holding that a product is defective if in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him") (citing Restatement (Second), § 402A, Comment g); *Ontai v. Straub Clinic & Hosp.*, 66 Haw. 237, 241, 659 P.2d 734, 740 (1983) ("It is enough that the plaintiff demonstrates that because of its manufacture or design, the product does not meet the reasonable expectations of the ordinary consumer or user as to its safety.").

[47]    REV. CODE. WASH. 7.72.030(2)(a). *Accord Camacho v. Honda Motor Co. Ltd.*, 741 P.2d 1240, 1247 (Colo. 1987) ("The question in manufacturing defect cases is whether the product as produced conformed with the manufacturer's specifications."); *Spectron Dev. Lab. v. Am. Hollow Boring Co.*, 123 N.M. 170, 174, 936 P.2d 852 857, (N.M. Ct. App. 1997) ("[A] product contains a manufacturing defect when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product[.]").

---

an individual basis." *Wolin Jguar Land Rover North Am., LLC*, 617 F. 3d 1168, 1175 (9th Cir. 2010).  As this Court before explained in certifying classes involving alleged defects in washing machines prone to development of odiferous mold:

> Given the small size of each class member's claim at issue here, class treatment is not merely the superior, but the only manner in which to ensure fair and efficient adjudication of the present action. Indeed, where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class action device. Furthermore, each member  of the class pursuing a claim individually would burden the judiciary, which is contrary to the goals of efficiency and judicial economy advanced by Rule 23.

*Tait*, 289 F.R.D. at 486-87 (quotations and citations omitted).

Like in *Tait*, the claims at issue in the present case are relatively modest, and certainly not so large as incline anyone toward incurring the costs of individual lawsuits. In past hepatitis-A outbreak in which classes have been certified as part of a settlement, the per-person settlement amounts for those who were vaccinated have been less than one-thousand dollars. *See* Marler Decl., ¶ 2, at 2. As the Seventh Circuit has memorably observed, "only a lunatic sues for $30." *Butler*, 727 F.3d at 801. Although having a claim likely worth more than $30, the point here is the same as the one previously made by this Court and the Seventh Circuit—not only is a class action a superior device, it is the only device that in any makes sense given the amounts at stake. To not certify the class action would be tantamount here to denying the plaintiffs any compensation at all. Therefore, the requirement of superiority is met here as well.

## VI.  CONCLUSION

For the reasons set forth above, the plaintiffs respectfully request the Court to certify this action for class treatment, and appoint the plaintiffs' counsel of record as class counsel.

RESPECTFULLY SUBMITTED this 27th Day of July, 2015.

Attorneys for the Plaintiffs

＿＿/s/**_Denis W. Stearns_**＿＿＿＿＿＿
Denis W. Stearns
William D. Marler
Marler Clark, LLP, PS

1

2

3 **CERTIFICATE OF SERVICE**

4   I hereby certify that on the 27th day of July, 2015, I electronically transmitted the

5 foregoing document to the U.S. District Court Clerk's Office using the Court's CM/ECF

6 System for filing and transmittal of a Notice of Electronic Filing, thereby serving all

7 counsel of record in this matter.

8

9         By:  /s/ Denis W. Stearns   

10

11 Richard Ramsey Waite
Kenney Waite and Stevens

12 427 South Cedros Avenue, Suite 101
Solano Beach, CA  92075

13 rwaite@keenlaw.com

14
Mary M. Best

15 Kenney Waite and Stevens
402 West Broadway, Suite 1820

16 San Diego, CA 92101
mbest@keenlaw.com

17

18 Frederic Levi Gordon
Gordon and Holmes

19 223 West Date Street
San Diego, CA 92101-3571

20 fgordon@gordonandholmes.com

21
Adam T. Kent

22 Daymark Realty Advisors Inc.
1551 North Tustin Avenue, Suite 740

23 Santa Ana, CA  92705
Email: akent@daymarkra.com

24
**Attorneys for Plaintiffs**

25

26

27

28

Guy R. Gruppie
Eric P. Weiss
Murchison & Cumming LLP
801 South Grand Avenue, 9th Floor
Los Angeles, CA  90017-4624
ggruppie@murchisonlaw.com
eweiss@murchisonlaw.com

David A. Ernst
Nicholas Kampers
Davis Wright Tremaine LLP
1300 SW Fifth Avenue, Suite 2300
Portland, OR  97201
davidernst@dwt.com
nicholaskampars@dwt.com

**Counsel for Defendants:  Townsend Farms, Incorporated AND Costco Wholesale Co., Inc.**

G. David Godwin
Robert Alfred Binion
Carroll, Burdick & McDonough LLP
44 Montgomery Street, Suite 400
San Francisco, CA 94104
dgodwin@cbmlaw.com
rbinion@cbmlaw.com

**Counsel for Defendants:  Purely Pomegranate, Incorporated**

Peter H. Crossin
Mark A. Weinstein
Veatch Carlson, LLP
700 South Flower, 22nd Floor
Los Angeles, CA 90017
pcrossin@veatchfirm.com
mweinstein@veatchfirm.com

**Counsel for Defendants:  Fallon Trading Company, Incorporated**

Cary L. Wood
Christina Karayan
Lewis Brisbois Bisgaard and Smith LLP
221 North Figuerora Street, Suite 1200
Los Angeles, CA  90012
eric.kizirian@lewisbrisbois.com
cary.wood@lewisbrisbois.com
matthew.taylor@lewisbrisbois.com
christina.karayan@lewisbrisbois.com

**Counsel for Defendants:  United Juice Corp.**