O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| JACOB PETERSEN, et al., | Case No.: SA CV 13-1292-DOC (JCGx) |
| Plaintiffs, | |
| vs. | ORDER RE: MOTION FOR CLASS |
| COSTCO WHOLESALE CO., INC., et al. | CERTIFICATION [133] |
| Defendants. | |

Before the Court is the Plaintiffs' Motion for Class Certification ("Motion") (Dkt. 134)

## I.     Background

This lawsuit is a putative consumer class action brought by Plaintiffs Jacob Petersen, Gayle Prather,[1] Suzanne Faber, Andrea Medrano,[2] Leslie Lee, David Troutman,[3] Thomas Fiore, Leslie Straka, Jay Sewards, and Frances Sewards (collectively, "Plaintiffs") against Defendants Costco Wholesale Co., Inc, ("Costco"), Townsend Farms, Inc. ("Townsend"), Purely Pomengranate, Inc. ("Purely Pomengranate"), Fallon Trading Co. Inc. ("Fallon"), and United Juice Corp ("United Juice"). Plaintiffs allege injury as a result of the risk of exposure to the hepatitis A virus ("HAV") after consuming Townsend Farms Organic Anti-Oxidant Blend, a frozen berry and pomegranate seed mix ("Townsend berry mix") purchased at Costco. Third Amended Complaint ("TAC") (Dkt. 71) ¶¶ 11, 21, 24.

### A. Facts

An outbreak of hepatitis A infections occurred in the Western United States in May 2013. Declaration of Denis Stearns ("Stearns Decl.") (Dkt. 136) Ex. 5. On May 13, 2013, the New Mexico Department of Health notified the Centers for Disease Control and Prevention ("CDC") of two people who were diagnosed with hepatitis A symptoms within one week of each other. Stearns Decl. Ex. 1 at 7. The Colorado Department of Public Health identified additional outbreaks soon after. *Id.* Ultimately, the outbreak was linked to the consumption of Townsend berry mix sold to consumers at various Costco locations in early 2013. *Id.* ¶ 24.

The CDC informed Defendant Costco of this outbreak on or about May 29, 2013. Stearns Decl. Ex. 2 at 4. After learning of the outbreak, Costco took immediate steps to limit the harm caused by the product. Costco removed the Townsend berry mix from its retail locations on May 29, 2013 and May 30, 2013. *Id.* On or around May 31, 2013, Costco used its customer database to notify "potential Costco customers by telephone and mail regarding the

---

[1] Gayle Prather has replaced Chris Mason, a former named plaintiff who has now been excluded from the class definition.
[2] Andrea Medrano has been named as a replacement for Motoko and Jenabe Caldwell, who have become too infirm to act. Mot. at 18 n.25.
[3] Plaintiffs have requested that David Troutman be substituted for Anthony McConaghy, who unfortunately passed away. Mot. at 19 n.35.

potential outbreak" and specifically "mailed letters to all Costco members who purchased the product . . . ." *Id*. Ex. 2 at 6.

In addition to directly communicating with its members, Costco executives sent several internal messages regarding the product. Christine Summers ("Summers"), Costco's Director of Food Safety and Corporate Quality Assurance, sent a letter to all warehouse managers notifying them to "pull and hold" the Townsend berry mix and to "wrap and mark [the] product 'Do Not Sell.'" Stearns Decl. Ex. 3 at 1. On May 31, Craig Wilson ("Wilson"), the Vice President of Costco, sent a letter to all building managers informing them the "CDC will this afternoon announce an outbreak of hepatitis A in 5 states—Colorado, New Mexico, Nevada, Arizona, and California" and that the outbreak was "potentially associated with item # 5955820, the "'Townsend Farm Organic Anti-Oxidant Blend.'" *Id*. Ex. 4 at 1. That same day, Costco's building managers were told to inform Costco members they should discard the product, and if they had consumed the product in the last two weeks, they should contact their health care providers to inquire about vaccinations. *Id*. Ex. 5 at 1.

On June 2, 2013, Townsend Farms "opened a call center for customers to contact Townsend Farms with any questions . . . ." *Id*. Ex. 2 at 6. The following day, Townsend Farms announced a partial recall of the Townsend berry mix. *Id*. Ex. 7 at 1. The announcement stated Townsend was "implementing this voluntary recall after learning that one of the ingredients of the frozen Organic Antioxidant Blend, pomegranate seeds processed in Turkey," was potentially linked to the outbreak. *Id*. Townsend later expanded its recall efforts "after the FDA and the CDC confirmed that the epidemiological evidence supports a clear association between hepatitis A illness outbreak and one lot of organic pomegranate seeds used in the Frozen Organic Antioxidant blend subject to the voluntary recall." *Id*. Ex. 9 at 1; *see id*. Ex. 12 at 4.

On June 6, 2013, Costco sent a food safety update to its members. The update informed Costco Members that "[i]f you have eaten the product in the last 10 days the CDC & FDA advice is to visit your personal health care provider or your local health department to receive a Hepatitis A vaccination." *Id*. Ex. 14 at 1. The update added that starting on June 6, 2013, "vaccinations will [] be available at your local Costco Pharmacy at no charge." *Id*.  Costco also

offered to reimburse the cost of vaccinations received at other locations. *Id.* In total, Costco administered approximately 10,316 vaccinations free of charge at its various stores. *Id.* Ex. 2 at 7. Costco maintained records of which members received the hepatitis A vaccination at its pharmacies, and sent letters to these members in December 2013 reminding them to get the follow-up hepatitis booster vaccination. *See id.* Ex.18 at 1. Costco initially paid for the vaccinations administered at its pharmacies, but later asked Townsend to reimburse these costs. *Id.* Ex. 17 at 9–10. Wilson sent a letter to Costco's warehouse managers in mid-December stating that "[m]embers that chose to get vaccinated at their health care provider will be coming to get a refund for their booster vaccination." *Id.* Ex. 19 at 1.

### B.  Named Plaintiffs

Plaintiffs are individuals from nine different states: California, Arizona, Colorado, Idaho, Nevada, Oregon, Washington, New Mexico, and Hawaii. TAC ¶ 20. Each Plaintiff submitted a declaration detailing his or her purchase and consumption of the Townsend berry mix, and the preventative medical care he or she received. *Id.* ¶ 22.

#### 1.    Jacob Petersen

Jacob Petersen ("Petersen") purchased Townsend berry mix in Irvine, California on May 16, 2013. TAC ¶ 1. He consumed the product on May 16, 17, 18, 21, 22, 24, and 30, 2013. Mot. Ex. A at 1. At the urging of Dr. Chung of the Orange County Department of Health, Petersen went to Sand Canyon Urgent Care where he received an immune-globulin shot. Declaration of Jacob Petersen ("Petersen Decl." (Dkt. 141) ¶ 4. He paid $120.00 for the vaccination. *Id.* ¶ 5.

#### 2.    Gayle Prather

Gayle Prather ("Prather") is a resident of Pima County, Arizona. TAC ¶ 2. She purchased the Townsend berry mix on April 12, 2013 at a Costco located in Tucson, Arizona. Declaration of Gayle Prather ("Prather Decl.") (Dkt. 142) ¶ 2. She consumed some of the fruit almost every day for over a month. *Id.* ¶ 3. After receiving an automated phone message from Costco, she went to a local Walgreen's Clinic and received the hepatitis A vaccination, for which she paid $108.99. *Id.* ¶¶ 3, 4.

### 3. Suzanne Faber

Suzanne Faber ("Faber") bought the Townsend berry mix in Colorado Springs, Colorado, and she consumed the product between May 29 and June 3, 2013. Declaration of Suzanne Faber ("Faber Decl.") (Dkt. 137) ¶ 2. She received an immune globulin shot on June 4 from a doctor with Colorado Spring Health Partners. *Id.* ¶ 3. She paid $120.00 for the shot. *Id.*

### 4. Leslie Lee

Leslie Lee ("Lee") is a resident of Idaho. TAC ¶ 5. She consumed the Townsend berry mix from the end of April through May 2013. Declaration of Leslie Lee ("Lee Decl.") (Dkt. 139) ¶ 2. After learning of the recall, she returned the remaining berry mix to the Costco in Coeur D'Alene, Idaho. *Id.* ¶ 5. She paid $101.00 for a vaccination, $68.00 for the doctor visit, and $156.60 for blood work at Ironwood Family Practice. *Id.* ¶ 3.

### 5. Thomas Fiore

Thomas Fiore ("Fiore") is a resident of Nevada. TAC ¶ 7. He purchased the Townsend berry mix at a Costco on May 18, 2013 in Las Vegas, Nevada. Declaration of Thomas Fiore ("Fiore Decl.") (Dkt. 138) ¶ 2. He received a free vaccine at Costco's pharmacy on June 10, 2013. *Id.* ¶ 3.

### 6. Leslie Straka

Leslie Straka ("Straka") is a resident of Lane County, Oregon. TAC ¶ 8. Straka bought the Townsend berry mix at a Costco located in Eugene, Oregon. Declaration of Leslie Straka ("Straka Decl.") (Dkt. 145) ¶ 2. After learning of the product recall from a local newspaper, Straka received a hepatitis A vaccine from a Rite Aid pharmacy at a cost of approximately $90.00. *Id.* ¶ 4.

### 7. Jay and Frances Sewards

Jay and Frances Sewards (the "Sewards") are residents of Jefferson County, Washington. TAC ¶ 9. Between January and April 2013, they purchased nine bags of Townsend berry mix from Costco. Declaration of Jay Sewards ("Jay Sewards Decl.") (Dkt. 143) ¶ 2. Based on the recommendation of the CDC and Costco, the Sewards each obtained hepatitis A vaccinations and received blood testing at the Medical Center in Murrieta,

California. *Id.* ¶ 3; Declaration of Frances Sewards ("Frances Sewards Decl.") (Dkt. 144) ¶ 2. The costs for the Sewards' vaccinations were $137.00 each, and the cost for the blood testing was $148.00 each.

### 8. David Troutman

David Troutman ("Troutman") is a resident of New Mexico. Declaration of David Troutman ("Troutman Decl.") (Dkt. 146) ¶ 2. He purchased Townsend berry mix on May 12, 2013 from a Costco located in Albuquerque, New Mexico, and he consumed the product from May 13 until May 31. *Id.* ¶ 2. Troutman spoke with a nurse from the New Mexico Department of Health on June 3 and subsequently received the vaccine at New Mexico Aids Services. *Id.* ¶ 4.

### 9. Andrea Medrano

Andrea Medrano ("Medrano") consumed the Townsend mix on June 8, 10, and 12, 2013. Declaration of Andrea Medrano ("Medrano Decl.") (Dkt. 140) ¶ 2. After receiving a letter from Townsend regarding the product recall, Medrano went to Kaiser located in Hawaii to receive the vaccine. *Id.* ¶ 4. She also returned the remaining berry mix to Costco for a refund. *Id.* ¶ 5.

### C. Additional Class Allegations

In addition to bringing suit against Costco and Townsend, Plaintiffs have also named Purely Pomegranate, Fallon, and United Juice as Defendants. Specifically, Plaintiffs allege:

> The defendants Purely Pomegranate, Fallon Trading and United Juice variously and respectively imported, manufactured, distributed, or sold the HAV-contaminated pomegranate arils that the defendant Townsend Farms used to manufacture the recalled products. In turn, the defendant Townsend Farms sold the recalled product to Costco for retail sale in its stores, which is where the recalled product that caused injury to the named-plaintiffs and class members was purchased.

TAC ¶ 38.

Further, Plaintiffs allege that 162 individuals across ten states were infected by the hepatitis A virus. *Id.* ¶ 37. Finally, Plaintiffs note that "CDC and other state and regional agencies advised any purchasers of the recalled product to refrain from consuming the Product,

and to obtain HAV [hepatitis A vaccine], or a prophylactic dose of IG [immune globin]." *Id.* ¶ 42.

### D. Procedural History

Plaintiffs originally filed this lawsuit on June 3, 2013 in Orange County Superior Court. Notice of Removal (Dkt. 1) Ex. A. The case was removed to federal court on August 22, 2013. *Id.* Plaintiffs filed the operative complaint, the Third Amended Complaint, on September 4, 2014 (Dkt. 71).

Plaintiffs filed the instant Motion on July 27, 2015 (Dkt. 133). Defendants Costco, Townsend, and Fallon filed their Opposition on September 28, 2015 (Dkt. 159). Defendant United Juice filed its Opposition the same day (Dkt. 158). Plaintiffs filed two separate replies on October 5, 2015 (Dkts. 160, 161).

The Court held a hearing on October 26, 2015 (Dkt. 168). On October 27, 2015, the Court ordered additional briefing, asking the parties to address the following three issues:

1.  Whether additional subclasses can account for the variations in state laws;

2.  What impact individual inquiries should have on the Court's predominance analysis, including any differences in emotional distress damages and any differences in economic damages (i.e. the fact that some potential members received free vaccinations at Costco and others paid for vaccinations elsewhere); and

3.  Whether Plaintiffs' abandonment of their negligence and breach of warranty claims has any impact on the class certification analysis.

Order for Supplemental Briefing (Dkt. 169) at 1. Plaintiffs submitted the Supplemental Briefing on November 3, 2015. Plaintiffs' Supplement to Motion ("Pls. Supp.") (Dkt. 173). Defendant Costco filed its Supplemental Briefing on November 10, 2015. Costco's Supplement in Opposition ("Costco Supp.") (Dkt. 174). Defendant United Juice also filed its Supplemental Briefing on November 10, 2015 ("United Juice Supp.") (Dkt. 175).

## II.    Legal Standard

Courts may certify a class action only if it satisfies all four requirements identified in Federal Rule of Civil Procedure 23(a). *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614 (1997). Rule 23(a) requires Plaintiffs to show the following: (1) the class is so "numerous" that joinder of all members individually is impracticable; (2) there are questions of law or fact "common" to the class; (3) the claims or defenses of the class representatives are "typical" of the claims or defenses of the class; and (4) the person representing the class is able to fairly and "adequately" protect the interests of all class members. Fed. R. Civ. P. 23(a). These requirements are commonly referred to as "numerosity," "commonality," "typicality," and "adequacy." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co.,* 593 F.3d 802, 806 (9th Cir. 2010).

After satisfying these four prerequisites, a party must also demonstrate compliance with one of the requirements under Rule 23(b). Here, because Plaintiffs seek certification under Rule 23(b)(3) they must demonstrate that common "questions of law or fact" predominate over questions affecting individual members and that a class action is a superior method "for fairly and efficiently adjudicating" the action, Fed. R. Civ. P. 23(b)(3).

The decision to grant or deny a motion for class certification is committed to the trial court's broad discretion. *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010). However, "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011). A party seeking class certification must affirmatively demonstrate compliance with Rule 23 – that is, the party must be prepared to prove that there are *in fact* sufficiently numerous parties and common questions of law or fact. *Id.*

In resolving a class certification motion, it is inevitable that the Court will touch on the merits of a plaintiff's claims. *See Wal-Mart,* 131 S. Ct. at 2551–52 ("The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's causes of action.") (quoting *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 156 (1982)). But, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds,* 133 S. Ct. 1184, 1194–95

(2013). Accordingly, any merits consideration must be limited to those issues necessary to deciding class certification. *See id.* at 1195 ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."). "[W]hether class members could actually prevail on the merits of their claims is not a proper inquiry in determining the preliminary question of whether common questions exist." *Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1112 (9th Cir. 2014) (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011)).

## III. Discussion

Plaintiffs seek to certify the following class:

> The class that the plaintiffs propose for certification is defined as follows: All residents of Arizona, California, Colorado, Idaho, Hawaii, Nevada, New Mexico, Oregon, or Washington who: (1) consumed the recalled product—that is, Townsend Farms Organic Anti-Oxidant Blend frozen berry-mix purchased at Costco and subject to the recall that was announced in press releases that the Townsend Farms issued on June 4 and 28, 2013, and (2) received preventive medical treatment, including an injection of hepatitis-A vaccine or immune globulin, blood tests, and other associated costs.

Mot. at 3.[4]

In their Motion for Class Certification, Plaintiffs originally proposed the creation of two subclasses. Plaintiffs' first proposed a "Townsend Farms Only Sub-Class," covering residents of Colorado, Idaho, and Washington. Mot. at 4. In these three states, a seller that does not manufacture the product – Costco in this case – cannot be held strictly liable for the sale of a defective product. Thus, Plaintiffs in the first proposed subclass asserted claims only against Townsend. Second, Plaintiffs proposed a "Costco/Townsend Farms Sub-Class," which consists of "[a]ll persons meeting the class-definition who are residents of Arizona, California, Hawaii,

---

[4] As Plaintiffs note, this class definition differs from the one Plaintiffs proposed in their Third Amended Complaint. *See* TAC ¶ 22. However, many courts have recognized that class definitions are fluid, even at the certification stage. *See, e.g.*, *In re Hulu Privacy Litigation*, No. C 11-03764 LB, 2014 WL 2758598, at *14 (N.D. Cal. June 17, 2014) (finding "definitional flaws 'can and often should be resolved by refining the class definition rather than flatly denying class certification on that basis'") (quoting *Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 825 (7th Cir. 2012)).

Nevada, New Mexico, and Oregon." *Id.* In these six states, it is possible to hold a non-manufacturing seller liable for the sale of defective products. Thus, Plaintiffs in the second proposed subclass alleged claims against both Townsend and Costco.

At the hearing on October 26, 2015 and in its tentative order, the Court raised concerns that Plaintiffs' two proposed subclasses did not adequately account for variations in state laws and therefore raised significant issues under the predominance inquiry. In the Court's Order for Additional Briefing, the Court asked the parties "[w]hether additional subclasses can account for the variations in state laws." Order for Supplemental Briefing at 1. In their Supplemental Briefing, Plaintiffs now propose three subclasses. Pls. Supp. at 8–9. Specifically, Plaintiffs propose  (1) a subclass for residents of Washington and Idaho ("Washington and Idaho Subclass"), (2) a subclass for residents of Colorado ("Colorado Subclass"), and (3) a subclass for residents of Arizona, California, Hawaii, Nevada, New Mexico, and Oregon ("Costco/Townsend Farms Subclass"). *Id.* In the alternative, Plaintiffs propose the formation of single-state subclasses. *Id.* at 13 ("[A] subclass could be created for each of the nine states, if material variations are deemed to exist."). As Plaintiffs have clarified for the Court, they are asking "the Court to certify a liability-only class, reserving for a second phase of trial the issue of damages." *Id.* at 4.

Under Federal Rule of Civil Procedure 23(c)(4), "[when] appropriate, an action may be brought or maintained as a class action with respect to particular issues. Rule 23(c)(5) provides that "[w]hen appropriate, a class may be divided into subclasses that are treated as a class under this rule." As the Ninth Circuit has made clear, "each subclass must independently meet the requirements of Rule 23 for the maintenance of a class action." *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981).

### A. The Class is Ascertainable

Before establishing numerosity, commonality, typicality, and adequacy, "the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009). "A class definition should be precise, objective, and presently ascertainable," though "the class need not be so ascertainable

that every potential member can be identified at the commencement of the action." *O'Connor v. Boeing N. Am., Inc.,* 184 F.R.D. 311, 319 (C.D. Cal. 1998) (internal quotations omitted). "As long as the general outlines of the membership of the class are determinable at the outset of the litigation, a class will be deemed to exist." *Id.*

The Court is satisfied that Plaintiffs' subclasses are ascertainable in the sense that membership could be determined through objective criteria. As explained by Plaintiffs, Costco "has maintained a database of all customer purchases," which it used to "directly contact each purchaser by both phone and mail." Mot. at 13. In addition "to purchase records, the identities of the 10,316 people who obtained hepatitis-A vaccinations at a Costco pharmacy are also already known." *Id.* Defendants argue the class is not ascertainable because there are class members who did not directly purchase the item and/or did not receive vaccinations at Costco. However, since the class "need not be so ascertainable that every potential member that can be identified" at this stage, the Court finds that Plaintiffs have satisfied the ascertainability requirement.

Here, the Court concludes "it is administratively feasible to determine whether a particular person is a class member" and thus "bound by the judgment." *In re Hulu Privacy Litigation*, 2014 WL 2758598, at *13. As such, the Court will address the other Rule 23(a) and (b) requirements.

### B. Numerosity

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, Plaintiffs have alleged that the proposed class numbers in the thousands, and Defendants do not dispute the three proposed subclasses satisfy the numerosity requirement. Based on the evidence presented,[5] the Court finds that Rule 23(a)(1) is satisfied for each subclass.

### C. Commonality

Rule 23(a)(2) requires courts to perform a "rigorous analysis" to determine whether "there are questions of law or fact common to the class," but "even a single common question

---

[5] Most importantly, Plaintiffs attach a spreadsheet that identifies the number of individuals who were vaccinated by Costco, which provides a breakdown of these individuals by state. *See* Stearns Decl. Ex. 22.

will do." *See Wal-Mart*, 131 S. Ct. at 2551, 2556 (citations and quotations omitted); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). Certification is appropriate where the legality of a particular policy presents a "significant question of law" that is "apt to drive the resolution of the litigation." *Abdullah v. U.S. Sec. Assoc.*, 731 F.3d 952, 963 (9th Cir. 2013) (citing *Wal-Mart*, 131 S. Ct. at 2551).

The requirements of Rule 23(a)(2) have "been construed permissively," and just one common question of law or fact will satisfy the rule. *See Ellis*, 657 F.3d at 981. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion [predominance] requirements of Rule 23(b)(3)." *Id.*

Here, Plaintiffs present several common issues that they allege will be resolved by this action, including:

> (1) Whether Townsend's berry mix is defective;
>
> (2) Whether the recalled product was the cause of Plaintiffs' alleged injuries;
>
> (3) Whether the Plaintiffs who consumed the product and followed CDC recommendations took medically reasonable steps; and
>
> (4) Whether those who consumed the recalled product reasonably feared infection, based on the information provided by the defendants and public health officials.

Mot. at 17.

Plaintiffs also propose fourteen other allegedly common questions of law and fact in their operative complaint, *see* TAC at 8–10, such as "whether Townsend Farms agreed to a FDA-recall of the Product and notified those who had consumed the recalled product to not eat the product because it was not safe to eat or would put anyone consuming the product at risk of HAV infection," *id.* ¶ 26.

Plaintiffs argue these questions of law and fact apply to all members of the class and that the answers to these questions will drive the resolution of the litigation. *Id.* They note this case involves a "single identically-labeled product and lot-code sold only at Costco." *Id.* at 8; *see*

1  *also* Reply to Costco Opp'n at 13–14 ("In the present case, a single, specific product, sold for a

2  limited and defined period of time, a product easily identified by consumers, and whose

3  purchase is easily proven through Costco's database . . . .").

4       Defendants assert the common questions are not susceptible to common proof. Costco

5  Opp'n at 3. Defendants take particular issue with Plaintiffs' fourth proposed common question –

6  whether those who consumed the recalled product reasonably feared infection. Specifically,

7  Defendants argue that both the factual and legal circumstances surrounding consumption differ

8  for each person, citing differences in the "amount of the Berry Mix one consumed, the length of

9  time one consumed the product, the passage of time after consumption, and one's unique

10  medical history influence . . ." as well as the variance in the states' legal standards concerning

11  whether an individual "reasonably feared" infection. *Id.* at 4–5.

12       Defendants highlight a variety of other differences, which they argue preclude a finding

13  of commonality. Among these differences are the fact that some Plaintiffs may have been

14  actually been exposed to hepatitis A, while others may not have been; Plaintiff's varying

15  injuries; each class member's personal beliefs on vaccinations; and variations in state laws. *See*

16  Costco Opp'n at 5–9.

17       But even accepting Defendants' arguments, the Court still finds that common questions

18  exist. Specifically, Defendants do not adequately address the common question of whether the

19  product was defective.[6] Given that Plaintiffs allege that a single product sold only at Costco

20  was defective, there is a common core of salient facts. *See Valentino v. Carter-Wallace, Inc.*, 97

21  F.3d 1227, 1229 (9th Cir. 1996). Further, Defendants do not adequately address the second

22  common question Plaintiffs propose – whether the Townsend berry mix was the cause of

23  Plaintiffs' alleged injuries

24       In its Opposition, United Juice adds arguments that Plaintiffs cannot meet the

25  commonality (or predominance requirement) because they will have a difficult time proving a

26  defective product. *See, e.g.*, United Juice Opp'n at 10 (section entitled "Proof of a Recall is Not

27  ___

28  [6] This is especially as true because, as discussed below, Plaintiff has proposed forming single-state classes. Thus, the question of whether the product is defective – which depends on the laws of the given state – will be common to all members of the single-state subclasses.

Sufficient To Prove a Defect"). United Juice's Opposition relies heavily on *Collins v. Safeway Stores, Inc.*, 187 Cal. App. 3d, 62 (1986). The Ninth Circuit, however, has made clear that "proof of the manifestation of a defect is not a prerequisite to class certification." *Baker v. Microsoft Corp.*, 797 F.3d 607, 611 (9th Cir. 2015) (citation omitted). Accordingly, the Court declines to deny class certification on the basis that Plaintiffs have not adequately proved the products were defective at this stage.

Because the presence of some legal questions that are susceptible to common proof and the common core of factual allegations, the Court finds that Rule 23(a)(2) is satisfied.

### D. Typicality and Adequacy

A class representative's claims or defenses must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Courts assess typicality by determining whether the class representatives and the rest of the putative class have similar injuries and conduct. *Hanlon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). A class representative must also be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In determining adequacy, courts resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

The Ninth Circuit has stated "[t]he purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508. The "test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct. *Id.* (citing *Schwartz v. Harp*, 105 F.R.D. 279, 282 (C.D. Cal. 1985)). Representative claims "are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Hanlon* 150 F.3d at 1020.

"[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Hanon,* 976 F.2d at 508.

Unique defenses can go to either the typicality or adequacy of class representatives. *Petrie v. Elec. Game Card, Inc.*, No. SACV100252DOCRNBX, 2015 WL 4608227, at *4 (C.D. Cal. July 31, 2015) (citing *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir. 1990)). Further, "[t]he issues of predominance, superiority, typicality, and other challenges to [a named plaintiff's] class representation need not be considered if she is not in the subject class." *Id.*

Defendants argue Plaintiffs have failed to meet their burden under the typicality and adequacy prongs. In arguing there is no typical case, Defendants rely on many of the same distinctions highlighted in the commonality section – for instance, they note some of the named Plaintiffs received injection of hepatitis A vaccines, while others received shots of immune globulin; the fact that some Plaintiffs like David Troutman did not have any bloodwork or testing done, while others like Frances Seward did receive bloodwork; and the variations in state laws with respect to recovery for emotional distress. Costco Opp'n at 10–12.

The Court concludes distinctions Defendants raise do not preclude a finding of typicality. The different type of medical care Plaintiffs received is inconsequential because all the named Plaintiffs received some form of preventative care. Further, the variations in the state laws do not defeat typicality because the named Plaintiffs need not raise identical claims to all the possible claims in the class. Here, the named Plaintiffs have alleged injuries that are the same, or at the least very similar, to the injuries of absent class members. And Plaintiffs have also alleged their injuries derive from the "same course of conduct" – namely, Defendants' manufacturing and sale of the Townsend berry mix.

At oral argument, once it became clear Plaintiffs were only pursuing their strict liability claim, Defendants raised the additional argument that Plaintiffs are not adequate class representatives because they abandoned potentially viable class claims for negligence and breach of warranty. The Court directed the parties to address this issue in their supplemental briefing.

In arguing Plaintiffs cannot be adequate representatives for the class, Defendant United Juice relies heavily on *Drimmer v. WD-40 Company*, 2007 U.S. Dist. LEXIS 62582 (S.D. Cal.

2007). Specifically, United Juice quotes the portion of *Drimmer* that reads, "[a] class representative is not an adequate representative when the class representative abandons particular remedies to the detriment of the class." *Drimmer*, 2007 U.S. Dist. LEXIS, at *7 (citing *Thompson v. Am. Tobacco Co.*, 189 F.R.D. 544, 550 (D. Minn. 1999)).

As a recent district court decision helpfully explained, "when the named plaintiffs seek to waive other elements of damage on behalf of the class in order to facilitate class certification, the Court must determine whether representation is adequate." *O'Connor v. Uber Technologies, Inc*, No. C-13-3826 EMC, at *28 (N.D. Cal. Sept. 1, 2015). In particular, courts "must examine, *inter alia*, the relative magnitude of the damage elements sought to be waived; where elements of damages for the class sought to be waived are substantial, questions may be raised about the adequacy of representation." *Id.* (citing *Tasion Commc'n v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630,  (N.D. Cal. 2015)). For instance, in *Tasion*, the court found an "adequacy problem" where plaintiffs forwent damages "likely to exceed by many times" the measures of damages the plaintiffs actually sought. *Tasion*, 308 F.R.D. at 641.

The Court does not find the same "adequacy problem" exists here. By abandoning their negligence and breach of warranty claims, Plaintiffs are not foregoing damages "likely to exceed by many times" the damages they are seeking; rather, as they state, Plaintiffs are still seeking the full range of "non-economic and economic damages." Pls. Supp. at 3; *see also id.* at 4 ("There is no type of relief obtainable under negligence or warranty that is not obtainable under strict liability."). As a court in this Circuit found, "[t]here is no rule that requires class certification of every conceivable cause of action. In some instances, opting not to assert certain claims may be an essential part of adequate representation." *Facciola v. Greenberg Traurig LLP*, 281 F.R.D. 363, 370 (D. Ariz. 2012). Thus, the Court concludes Plaintiffs' decision to forego claims for negligence and breach of warranty does not render them inadequate class representatives. Further, the Court finds the named Plaintiffs are adequate representatives who have vigorously litigated the case and taken their obligations to the Court seriously. *See* Named Plaintiffs' Declarations (Dkts. 137-146). Accordingly, Rule 23(a)(3) is satisfied.

Plaintiffs' counsel is also adequate. To be adequate, plaintiffs' counsel must be qualified, experienced, and generally able to conduct the proposed litigation. *See Lerwill* v. *Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Plaintiffs have retained qualified and experienced counsel who will adequately represent the interests of the class members and will prosecute the action vigorously on their behalf. *See generally* Declaration of William D. Marler Decl. ("Marler Decl.") (Dkt. 135); *see* Stearns Decl. (Dkt. 136). In sum, the Court finds that Plaintiffs' counsel can adequately represent the Class. Thus, Rule 23(a)(4) is satisfied. Therefore, the Court finds Plaintiffs have met all the requirements under Rule 23(a).

## IV.   Class Certification Under Rule 23(b)

Once Plaintiffs have satisfied the requirements of Rule 23(a), the proposed class must also satisfy at least one of the three requirements listed in Rule 23(b). Because the Court has concluded Plaintiffs satisfied the prerequisites of Rule 23(a), the Court now turns to Rule 23(b). Specifically, Plaintiffs invoke Rule 23(b)(3), under which common questions of law or fact must predominate and the class device must offer a superior means of resolving the dispute. The Court must also consider whether Plaintiffs have shown that damages can be feasibly and efficiently measured – an issue that affects all three of the proposed subclasses.

### A. Predominance

"Rule 23(b)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend,* 133 S. Ct. 1426, 1432 (2013). Rule 23(b) requires that courts "take a 'close look' at whether common questions predominate over individual ones." *Id.* The predominance inquiry "tests whether proposed class actions are sufficiently cohesive to warrant adjudication by representation." *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). In determining whether common questions predominate, the Court identifies the substantive issues related to plaintiff's claims (both the causes of action and affirmative defenses), and then considers the proof necessary to establish each element of the claim or defense; and considers how these issues would be tried. *See* Schwarzer, et al., Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 10–C § 10:412. The predominance inquiry requires that plaintiff demonstrate

common questions predominate as to each cause of action for which plaintiff seeks class certification. *Amchem,* 521 U.S. at 620, 117 S. Ct. 2231.

As noted earlier, Plaintiffs are seeking certification of a "liability-only class, reserving for a second phase of trial the issue of damages." Pls. Supp. at 4. Thus, the Court must evaluate whether the predominance criterion has been met with respect to Defendants' liability for Plaintiffs' strict liability claim. The Court finds that given this suit involves a single product, sold only at Costco, during a limited and defined period of time, there is initially a strong basis for finding that the proposed class action is "sufficiently cohesive to warrant adjudication by representation." *Anchem*, 521 U.S. at 623. As the Ninth Circuit noted in *Valentino,* "Plaintiffs contend, with considerable justification, that because the case involves only one manufacturer, only one product, only one marketing program, and a relatively short period of time, the case is more manageable for class action purposes than cases that involves multiple manufactures, multiple products, multiple marketing programs, and a longer period of time." *Valentino*, 97 F.3d at 1229; *see also id.* at 1231 ("In addition, *Dalkon Shield* involved multiple defendants and multiple marketing schemes, unlike the present case where a single manufacturer marketed one drug over a limited period of time."). Indeed, there are several significant common issues here, including Plaintiffs' contention that a single, specific lot of allegedly defective organic pomegranate seed has given rise to Plaintiffs' claims.[7] Therefore, evidence concerning the allegedly defective product in this case is likely to be "proved through evidence common to the class." *Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 522 (C.D. Cal. 2015). Put differently, determining whether Defendants sold a defective product in this case will not require a searching individualized inquiry; rather, there will be significant common proof at issue in resolving Defendants' liability. Thus, there is "glue holding together" the proposed class. *Wal-Mart*, 131 S. Ct. at 2545. Further, there are significant common facts related to Defendants' recall of the allegedly defective product, Defendants' communications to Plaintiffs concerning the allegedly defective product, and the class members' subsequent receipt of preventative

---

[7] In many ways, Defendants' course of conduct with respect to this single product and the associated recall is akin to a "mass tort involving a single catastrophic event such as an airplane crash or cruise ship food poisoning" where a "single happening or accident occurs to cause similar types of physical harm or property damage." *Valentino*, 97 F.3d at 1231 (internal citation and quotations omitted).

medical care. *See Hanlon*, 150 F.3d at 1022 ("A common nucleus of facts . . . dominates this litigation."). This suggests "classwide proof of causation is feasible in these circumstances because the same" product recall and notice from Costco "generally acted in a similar manner on each class member to product a similar effect" (i.e. seek out preventative medical care). *See Saavedra v. Eli Lilly and Co.*, No. 2:12-cv-9366-SVW (MANx), 2014 WL 7338930, at *8 (C.D. Cal. Dec. 18, 2014). Plaintiffs allege Defendants' sale of a defective product and subsequent recall of that product caused them to pay out-of-pocket for preventative care or lost wages – "objectively measurable harm." *Id.* at *8. Further, Defendants have not raised the possibility of unique, individualized "affirmative defenses (such as failure to follow directions, assumption of risk, contributory negligence, and the statute of limitations)" that generally counsel against predominance in products liability cases. *In re N. Dist. Of Cal. Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 853 (9th Cir. 182).

In its Supplement, Costco argues there are important differences among the Plaintiffs, including whether "they had been consuming the berry blend in different ways (frozen, thawed, uncooked, cooked, blended, alone), with different frequencies (daily, once a week, once in a long while or just once), over different periods of time (days week, or months)." Costco Supp. at 5. Costco also mentions the "varying medical histories" of the proposed class members. *Id.* The Court does not find these minor factual variations in individual consumption or medical histories are significant enough to overcome the significant common questions and defeat predominance. *See Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 650–51 (C.D. Cal. 1996) ("This is because defendant's argument ignores the fact that plaintiffs' claims actually focus on defendant's liability and defendant's conduct with regard to the leads . . . . Thus, because defendant's conduct with regard to the leads—and, hence, with regard to the plaintiffs themselves—involves questions of common fact primarily, the Court finds that this factor alone does not destroy the predominance of common questions."). Analyzing "the relationship between the common and individual issues in the case," *Hanlon*, 150 F.3d at 1022, the Court concludes Plaintiffs' claims are "sufficiently cohesive to warrant adjudication" with respect to

the core issues in this case, *Anchem*, 521 U.S. at 623;[8] *see also Hanlon*, 150 F.3d at 1023

(finding the case's "limited focus of the action, [and] the shared factual predicate" militated in

favor of finding that Rule 23(b)(3) requirements were met).

Defendants devote the majority of their attention to a single argument against

predominance: variations in state laws. While there is no "absolute bar to the certification of a

multi-state plaintiff class action," *Valentino*, 97 F.3d at 1230, the "law on predominance

requires the district court to consider variations in state law when a class action involves

multiple jurisdictions," *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 728 (9th Cir.

2007). When attempting to certify classes that span multiple states, plaintiffs "bear the burden

of providing an extensive analysis of state law variations to determine whether there are

insuperable obstacles to class certification." *Sweet v. Pfizer*, 232 F.R.D. 360, 372 (C.D. Cal.

2005) (citation omitted). While there are no hard and fast rules for what constitutes a "material

difference," the guiding inquiry is whether the state law variations would "spell the difference

between the success and failure" of Plaintiffs' strict liability claim. *See Mazza v. American

Honda Motor Co*, 686 F.3d 581, 591 (9th Cir. 2012). Certification "may be appropriate if the

class action proponent shows that state law variations can be effectively managed through the

creation of a small number of subclasses grouping the states that have similar legal doctrines."

*Washington Mutual Bank, FA v. Superior Court*, 24 Cal. 4th 906, 923 (collecting federal court

decisions that have considered multi-state class actions).

In their Supplemental Briefing, Plaintiffs contend there are few variations in the states'

strict liability because "proving a defect is substantially similar in all nine states." Pls. Supp. at

10. In support of this proposition, Plaintiffs cite to strict liability language from state court

decisions in the nine relevant states. *Id.* at 11. According to Plaintiffs, these are the "only three

subclasses [] needed to account for the variations in state law governing strict liability claims

based on the allegation of an injury-causing manufacturing defect." *Id.* at 8. As noted earlier,

Plaintiffs propose the following subclasses:  (1) the "Washington and Idaho Subclass," (2) the

"Colorado Subclass," and (3) the "Costco/Townsend Farms Subclass," which consists of

---

[8] *See supra* Note 6.

residents of Arizona, California, Hawaii, Nevada, New Mexico, and Oregon. Pls. Supp. at 8–9. In the alternative, Plaintiffs state that "if material variations are deemed to exist," a "subclass could be created for each of the nine states." *Id.* at 13; *see also* Mot. for Class Certification, October 26, 2015 ("Hr'g Tr.") at 7:5–7 ("[A]t minimum the Court is in position to certify nine state subclasses, based on the briefing.").

In their initial Motion and Supplemental Briefing, Plaintiffs identify and account for two material variations in the states' strict liability laws. Plaintiffs first note that because it is possible to hold a non-manufacturing seller, like Costco, liable for the sale of defective products in only six states, Plaintiffs created the "Costco/Townsend Farms Subclass" for those six states. Second, in the tentative order distributed to the parties, the Court noted that, in Colorado, non-compliance with a government code raises a rebuttable presumption that the product was defective or negligently made. Thus, Plaintiffs now propose the creation of a separate Colorado subclass to account for that important difference.[9]

Defendants reject the notion that these three subclasses account for all the material variations in the state laws; specifically, Defendants argue that several other differences in the states' strict liability standards, presumptions, and burdens overwhelm the common issues. Defendants specifically contend there are important state law differences concerning whether a product needs to be "unreasonably dangerous" or not; states' causation standards and allocation of liability rules; and unique defenses that are only present in certain states. Costco Supp. at 2–7.

As an initial matter, the Court notes that a close analysis of these purported differences reveal that many of them "are insignificant, and therefore, they present no hurdle to class certification." *In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271, 292 (S.D. Ohio 1997). For example, Costco repeatedly points to differences in the states' allocation of liability rules, "including applications of the doctrines of joint and several liability and comparative fault." Costco Supp. at 3. However, the Court is not convinced these allocation of liability differences

---

[9] Specifically, in their Supplemental Briefing, Plaintiffs "concede that this difference is material because the presumption imposes both a specific and heightened evidentiary burden on a defendant trying to disprove a product is defective, and requires that a jury be instructed specifically as to this law." Pls. Supp. at 8.

are material in the sense that they would "spell the difference between the success and failure" of Plaintiffs' claims. *Mazza*, 686 F.3d at 591. As Plaintiffs' counsel persuasively argued at the hearing, this issue is largely not material to this suit because there is a separate, parallel "indemnity and contribution action."[10] Hr'g Tr. at 23:17. Other purported differences Defendants highlight are simply irrelevant. For instance, in its State Law Variation Exhibit, United Juice writes, "New Mexico allows for additional defenses to section 402A claims." Declaration of Bryan Leifer Ex. 3 (Dkt. 158-4) at 2 (citing *Lopez v. Am. Baler Co.*, No. CIV 11-0227 JB/GBW, 2013 U.S. Dist. LEXIS 128348, *37 (D.N.M. Aug. 12, 2013)) ("The Court has interpreted New Mexico strict-products liability law to foreclose recovery against parties that do not place in allegedly defective product on the market."). But this unique defense has no bearing on this case, as Plaintiffs have alleged Defendants introduced a defective product into "the stream of commerce." *Lopez*, 2013 U.S. Dist. LEXIS 128348, at *37 ("[A] party who does not sell or otherwise place an allegedly defective product in the stream of commerce may not be strictly liable for any alleged harm.").

At the same time, Defendants have highlighted other differences that may, in due course, prove to be material. Most notably, Defendants have pointed to different state law formulations concerning whether a product has to be both defective and unreasonably dangerous, or just defective. *See* Costco Supp. at 2. However, the Court need not resolve whether these variations are material because Plaintiffs have alternatively proposed formulating nine single-state subclasses. This proposal "would avoid almost completely the tangled" variations in state laws present in other multi-state class action cases. *In re Welding Fume Prod. Liability Litig.*, 245 F.R.D. 279, 293 (N.D. Ohio 2007). "The smaller breadth of difference between the [nine] relevant state laws in this case" counsels in favor of this approach. Indeed, given that the strict liability cause of action is "virtually identical" in several of the relevant states, "careful trial planning with the use of jury interrogatories and special will avoid most jury-instruction complexities." *Id.* at 294.

---

[10] *See Townsend Farms, Inc. v. Goknur Gida Maddeleri Enerji Imalat Ithalat Ithacat Ticaret ve Sanayi A.S., et al.* Case No. 15-0837; *see also Purely Pomegranate, Inc., et al. v. Fallon Trading Company, et al.*, Case No. 15-0840.

In its Supplemental Briefing, United Juice argues a "multitude of subclasses are not manageable." United Juice Supp. at 7. Indeed, United Juice asserts Plaintiffs' "attempt to mollify predominance concerns predicated on variations in state law, creates manageability issues that are not adequately addressed by plaintiffs." *Id.* at 7–8. Plaintiffs respond that additional subclasses do not create an overwhelming manageability problem, "especially for a liability theory as relatively simple as one premised on strict liability and single alleged defect." The Court agrees with Plaintiffs. "The 'broad discretion' that a district court enjoys in determining whether to certify a class goes principally to the question of whether the court reasonably concludes it could manage the complexities that class certification carries." *In re Welding*, 245 F.R.D. at 294. In this case, the "undersigned believes a court could manage the differences" in strict liability laws among the nine states chosen by Plaintiffs "by holding separate trials for each state-wide class, or perhaps a combined trial for few statewide subclasses, where the law in those states is similar enough to allow creation of jury instructions and a verdict form that is not too complex." *In re Welding*, 245 F.R.D. at 294 (finding that eight single-state subclasses on medical monitoring law did not present overwhelming manageability problems). By "choosing only the [nine] states they did, and proposing single-state subclasses," *id.*, Plaintiffs have overcome all of the state law variations Defendants have identified. The Court further notes that during the initial round of briefing, Defendant Costco suggested this possibility of adding additional subclasses. *See* Costco Opp'n at 29 ("Should the court not be inclined to deny class certification entirely, additional sub-classes be created to better account for the different causes of action and corresponding recoveries within each of the nine states.").

Based on the foregoing, the Court concludes that Plaintiffs' proposed single-state subclasses both overcome the state law variation problems and present a manageable option for the litigation moving forward.

## B. Superiority

The second prong of the analysis under Rule 23(b)(3) also requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  A class action is superior "[w]here classwide litigation

of common issues will reduce litigation costs and promote greater efficiency." *Valentino*, 97
F.3d at 1234. "[T]he purpose of the superiority requirement is to assure that the class action is
the  most efficient and effective means of resolving the controversy. Where recovery on an
individual basis would be dwarfed by the cost of litigating on an individual basis, this factor
weighs in favor of class certification." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d
1168, 1175 (9th Cir. 2010).

As this Court previously found in *Tait*,

> Given the small size of each class member's claim at issue here, class
> treatment is not merely the superior, but the only manner in which to ensure
> fair and efficient adjudication of the present action. Indeed, where it is not
> economically feasible to obtain relief within the traditional framework of a
> multiplicity of small individual suits for damages, aggrieved persons may
> be without any effective redress unless they may employ the class action
> device. Furthermore, each member of the class pursuing a claim
> individually would burden the judiciary, which is contrary to the goals of
> efficiency and judicial economy advanced by Rule 23.

*Tait*, 289 F.R.D. at 486–87 (internal quotations and citations omitted). This logic applies with
equal force here given that the size of each class member's claim is relatively modest. The Court
finds "[i]t is far more efficient to litigate . . . on a classwide basis rather than in thousands of
individual and overlapping lawsuits." *Wolin*, 617 F.3d at 1176. "Proposed class members fact
the option of participating in this class action, or filing [thousands] of individual lawsuits that
could involve duplicating discovery and costs that exceed the extent of proposed class members'
individual injuries." *Id*; *see also Local Joint Executive Bd. of Culinary/Bartender Trust Fund v.
Las Vegas Sand, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (noting that "[i]f plaintiffs cannot
proceed as a class, some—perhaps most—will be unable to proceed as individuals because of
the disparity between their litigation costs and what they hope to recover"). Further, as discussed
above, classwide litigation will not be inefficient and unmanageable, especially because the
Court is adopting Plaintiffs' proposals to separate the classes into single-state subclasses and

bifurcate the liability questions from damages (see below). A class action lawsuit in this particular forum is also economical considering the Court currently has before it several other lawsuits that arise from the same set of facts, including the indemnity and contribution action mentioned above. The Court adds that Defendants have "not identified or proposed a superior adjudication method." *Spann*, 307 F.R.D. at 531. Finally, "any class member who wishes to control his or her own litigation may opt out of the class. *See id.* at 532 (citing Fed. R. Civ. P. 23(c)(2)(B)(v). Thus, the Court finds that classwide adjudication is "superior to other means of adjudicating this case." *Id.*

### C. Damages

Finally, the Court will consider Defendants' arguments that Plaintiffs have failed to meet their burden with respect to damages. The Court recognizes that "in this circuit . . . damage calculations alone cannot defeat certification." *Yokoyama v. Midland Nat. Life. Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010). Still, Plaintiffs "must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987–88 (9th Cir. 2015). Additionally, "plaintiffs must establish at the certification stage that 'damages . . . [can] feasibly and efficiently be calculated once the common liability questions are adjudicated.'" *Lilly v. Jamba Juice Company*, 308 F.R.D. 231, 244 (N.D. Cal. 2014) (citing *Leyva*, 716 F.3d at 514).

Here, Plaintiffs seek three primary forms of damages: (1) economic damages for those class members who paid out-of-pocket for vaccinations, (2) lost wages, and (3) non-economic damages. Plaintiffs have proposed that class members can "provide receipts to prove actual out-of-pocket expenses," offer an approximation of a reasonable lost wages amount, and use past settlement amounts and testimony to adequately measure non-economic damages. Pls. Supp. at 7. Defendants do not directly challenge Plaintiffs' proposal to use receipts, but raise concerns about Plaintiffs' proposed damages model for measuring lost wages and non-economic damages. *See* Costco Supp. at 8 n.2.

This issue need not be resolved, however. In this case, Plaintiffs ask the Court "to certify a liability-only case, reserving for a second phase of trial the issue of damages." Pls. Supp. at 4.

Recognizing that "[t]he amount of damages is invariably an individual question," *Yokoyama*, 594 F.3d at 1089 (quotation omitted), several courts have recently bifurcated liability questions from damages. *See, e.g.*, *Lilly*, 308 F.R.D. at 244; *Jimenez v. Allstaet Ins. Co.*, No. LA CV10-08486 JAK (FFMx), 2012 WL 1366052, at *15 (C.D. Cal. Apr. 18, 2012). The Court finds this approach to be appropriate here and therefore "reserves the issue whether damages can be calculated" based on the methods Plaintiff proposes. *Jimenez*, 2012 WL 1366052, at *15.

As explained by a district court in this Circuit,

> [T]he fact that a class may not be satisfied for purposes of seeking damages does not mean that it cannot be certified at all. In all of the other circuit court decisions cited in *Jimenez,* the courts of appeal concluded that the cases before them fell outside *Comcast's* scope at least in part because the classes were certified only for liability purposes rather than for purposes of considering damages. As the most recent of those cases noted, "the rule of *Comcast* is largely irrelevant '[w]here determinations on liability and damages have been bifurcated' in accordance with Rule 23(c)(4) and the district court has 'reserved all issues concerning damages for individual determination.'" *In re Deepwater Horizon*, 739 F.3d 790, 817 (5th Cir.2014) (quoting *In re Whirlpool*, 722 F.3d at 860 (6th Cir. 2013)[)]; *see also Butler*, 727 F.3d at 800 ("a class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed").

*Lilly*, 308 F.R.D. at 244.

As the Ninth Circuit has repeatedly made clear, "damage calculations alone cannot defeat certification." *Yokoyama*, 594 F.3d at 1094. Thus, "[s]ince Plaintiff has established that, with the exception of determining damages, all of the required elements of class certification have been met, the Court will exercise its discretion pursuant to Rule 23(c)(4) of the Federal

Rules of Civil Procedure to certify the proposed class solely for purposes of determining liability." *Lilly*, 308 F.R.D. at 244.

## V.    Disposition

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion, insofar as it seeks to certify nine single-state subclasses for the purposes of determining liability.

_David O. Carter_
_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

DATED:  January 25, 2016