O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| JACOB PETERSEN, et al.,<br><br>　　Plaintiffs,<br><br>　　vs.<br><br>COSTCO WHOLESALE CO., INC., et al.<br><br>　　Defendants. | Case No.: SA CV 13-1292-DOC (JCGx)<br><br><br>ORDER RE: MOTION TO DECERTIFY CLASS [210] |

Before the Court is the Defendants' Motion for Decertification ("Motion") (Dkt. 210).

## I. Background

This lawsuit is a consumer class action brought by Plaintiffs Jacob Petersen, Gayle Prather,[1] Suzanne Faber, Andrea Medrano,[2] Leslie Lee, David Troutman,[3] Thomas Fiore, Leslie Straka, Jay Sewards, and Frances Sewards (collectively, "Plaintiffs") against Defendants Costco Wholesale Co., Inc, ("Costco"), Townsend Farms, Inc. ("Townsend"), Purely Pomengranate, Inc. ("Purely Pomengranate"), Fallon Trading Co. Inc. ("Fallon"), and United Juice Corp ("United Juice"). Plaintiffs allege injury as a result of the risk of exposure to the hepatitis A virus ("HAV") after consuming Townsend Farms Organic Anti-Oxidant Blend, a frozen berry and pomegranate seed mix ("Townsend berry mix") purchased at Costco. Third Amended Complaint ("TAC") (Dkt. 71) ¶¶ 11, 21, 24.

### A. Facts

An outbreak of hepatitis A infections occurred in the Western United States in May 2013. Declaration of Denis Stearns ("Stearns Decl.") (Dkt. 136) Ex. 5. On May 13, 2013, the New Mexico Department of Health notified the Centers for Disease Control and Prevention ("CDC") that two people had been diagnosed with hepatitis A symptoms within one week of each other. Stearns Decl. Ex. 1 at 7. The Colorado Department of Public Health identified additional outbreaks soon after. *Id.* Ultimately, the outbreak was linked to the consumption of Townsend berry mix sold to consumers at various Costco locations in early 2013. *Id.* ¶ 24.

The CDC informed Defendant Costco of this outbreak on or about May 29, 2013. Stearns Decl. Ex. 2 at 4. After learning of the outbreak, Costco immediately took steps to limit the harm caused by the product. Costco removed the Townsend berry mix from its retail locations on May 29, 2013 and May 30, 2013. *Id.* On or around May 31, 2013, Costco used its customer database to notify "potential Costco customers by telephone and mail regarding the

---

[1] Gayle Prather has replaced Chris Mason, a former named plaintiff who has now been excluded from the class definition.
[2] Andrea Medrano has been named as a replacement for Motoko and Jenabe Caldwell, who have both become too infirm to act. Mot. at 18 n.25.
[3] Plaintiffs have requested that David Troutman be substituted for Anthony McConaghy, who has passed away. Mot. at 19 n.35.

potential outbreak" and specifically "mailed letters to all Costco members who purchased the product . . . ." *Id*. Ex. 2 at 6.

In addition to directly communicating with its members, Costco executives sent several internal messages regarding the product. Christine Summers ("Summers"), Costco's Director of Food Safety and Corporate Quality Assurance, sent a letter to all warehouse managers notifying them to "pull and hold" the Townsend berry mix and to "wrap and mark [the] product 'Do Not Sell.'" Stearns Decl. Ex. 3 at 1. On May 31, Craig Wilson ("Wilson"), the Vice President of Costco, sent a letter to all building managers informing them the "CDC will this afternoon announce an outbreak of hepatitis A in 5 states—Colorado, New Mexico, Nevada, Arizona, and California" and that the outbreak was "potentially associated with item # 5955820, the "'Townsend Farm Organic Anti-Oxidant Blend.'" *Id.* Ex. 4 at 1. That same day, Costco's building managers were told to inform Costco members they should discard the product, and if they had consumed the product in the last two weeks, they should contact their health care providers to inquire about vaccinations. *Id*. Ex. 5 at 1.

On June 2, 2013, Townsend Farms "opened a call center for customers to contact Townsend Farms with any questions . . . ." *Id.* Ex. 2 at 6. The following day, Townsend Farms announced a partial recall of the Townsend berry mix. *Id.* Ex. 7 at 1. The announcement stated Townsend was "implementing this voluntary recall after learning that one of the ingredients of the frozen Organic Antioxidant Blend, pomegranate seeds processed in Turkey," was potentially linked to the outbreak. *Id.* Townsend later expanded its recall efforts "after the FDA and the CDC confirmed that the epidemiological evidence supports a clear association between hepatitis A illness outbreak and one lot of organic pomegranate seeds used in the Frozen Organic Antioxidant blend subject to the voluntary recall." *Id.* Ex. 9 at 1; *see id.* Ex. 12 at 4.

On June 6, 2013, Costco sent a food safety update to its members. The update informed Costco Members that "[i]f you have eaten the product in the last 10 days the CDC & FDA advice is to visit your personal health care provider or your local health department to receive a Hepatitis A vaccination." *Id.* Ex. 14 at 1. The update added that starting on June 6, 2013, "vaccinations will [] be available at your local Costco Pharmacy at no charge." *Id.* Costco also

offered to reimburse the cost of vaccinations received at other locations. *Id.* In total, Costco administered approximately 10,316 vaccinations free of charge at its various stores. *Id.* Ex. 2 at 7. Costco maintained records of which members received the hepatitis A vaccination at its pharmacies, and sent letters to these members in December 2013 reminding them to get the follow-up hepatitis booster vaccination. *See id.* Ex.18 at 1. Costco initially paid for the vaccinations administered at its pharmacies, but later asked Townsend to reimburse these costs. *Id.* Ex. 17 at 9–10. Wilson sent a letter to Costco's warehouse managers in mid-December stating that "[m]embers that chose to get vaccinated at their health care provider will be coming to get a refund for their booster vaccination." *Id.* Ex. 19 at 1.

### B. Procedural History

Plaintiffs originally filed this lawsuit on June 3, 2013 in Orange County Superior Court. Notice of Removal (Dkt. 1) Ex. A. The case was removed to federal court on August 22, 2013. *Id.* Plaintiffs filed the operative complaint, the Third Amended Complaint, on September 4, 2014. In that complaint, Plaintiffs assert claims for strict liability, negligence, and breach of warranties against various Defendants. *See generally* TAC.

On July 27, 2015, the Plaintiffs proposed the following class for certification:

> All residents of Arizona, California, Colorado, Idaho, Hawaii, Nevada, New Mexico, Oregon, or Washington who: (1) consumed the recalled product—that is, Townsend Farms Organic Anti-Oxidant Blend frozen berry-mix purchased at Costco and subject to the recall that was announced in press releases that the Townsend Farms issued on June 4 and 28, 2013, and (2) received preventive medical treatment, including an injection of hepatitis-A vaccine or immune globulin, blood tests, and other associated costs.

Memorandum in Support of Motion to Certify Class (Dkt. 134) at 3. On January 25, 2016, the Court certified the class "insofar as [the Plaintiffs seek] to certify nine single-state subclasses for the purposes of determining liability." Order Re: Motion for Class Certification ("Class Cert. Order") (Dkt. 181) at 27.

Defendants Costco, Fallon, and Townsend filed the instant Motion on October 7, 2016. On October 11, 2016, Defendant United Juice filed a Joinder in Defendants' Motion to Decertify Class (Dkt. 213). Plaintiffs opposed the Motion on October 17, 2016 (Dkt. 216), and Defendants replied on October 24, 2016 (Dkt. 221). Oral argument was heard on the motion on November 7, 2016.

## II. Legal Standard

In considering a motion to decertify, a court must reevaluate whether the class continues to meet the requirements of Rule 23. *Id.* at 410. The burden of demonstrating that the elements of Rule 23 are still satisfied remains on the party defending certification. *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011); *Guido v. L'Oreal, USA, Inc.*, No. 2:11-CV-01067-CAS, 2014 WL 6603730, at *15 (C.D. Cal. July 24, 2014) ("*Marlo*[] unambiguously holds that the party seeking class certification bears the burden of satisfying Rule 23, both at initial certification and on a later motion to decertify."). The decision on whether to decertify lies within the court's sound discretion. *Knight v. Kenai Peninsula Borough Sch. Dist.*, 131 F.3d 807, 816 (9th Cir. 1997).

## III. Discussion

Defendants argue the class should be decertified because the class representatives no longer meet the typicality requirement and because individual issues predominate. Mot. at 3. The Court will address these arguments in turn.

### A. Typicality

A class representative's claims or defenses must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Courts assess typicality by determining whether the class representatives and the rest of the putative class have similar injuries and conduct. *Hanlon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The Ninth Circuit has stated "[t]he purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508. The "test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured

1  by the same course of conduct.'" *Id.* (citing *Schwartz v. Harp*, 105 F.R.D. 279, 282 (C.D. Cal. 1985)). Representative claims "are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Hanlon* 150 F.3d at 1020.

Defendants argue against the typicality of the class representatives on several different theories: (1) the class representatives cannot establish economic damages; (2) the class representatives cannot establish there was anything wrong with the product they consumed; (3) some class representatives are not seeking compensation for emotional damages; (4) one class member may have actually killed the hepatitis A virus, assuming it was even present, before she consumed the berry mix; (5) one class representative received multiple vaccinations at the time he was vaccinated against hepatitis A; (6) the claims of the class representatives for the state of Washington will actually be governed by California law; and (7) the class representatives cannot establish they were actually exposed to the hepatitis A virus and so are ineligible for emotional distress damages. *See* Mot. at 4–12. The Court will address each argument in turn.

### 1. Economic Damages

Defendants argue that none of the class representatives can establish all of the economic damages that the class is seeking as a whole—making them atypical class members. *See* Mot. at 5. In support of this argument, Defendants cite *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996). There, the Ninth Circuit held that class representatives were not typical where the class representatives had not suffered the main serious side effect associated with the drug that was the subject of the litigation. *See id.* at 1234. Here, Defendants argue the class representatives are inadequate as many did not suffer wage loss, incur any costs, or suffer medical expenses. Mot. at 5–6. Indeed, no class representative experienced all three injuries, and six of the representatives experienced none of those harms. *Id.*

In opposition, Plaintiffs argue the class representatives need not experience all of the economic damages sought by the class. Opp'n at 23. Plaintiffs point out that if the class representatives succeed in establishing Defendants' liability, that finding would be sufficient to

entitle other class members to recover for the full spectrum of economic harms that the individual class members suffered. *Id.* Defendants do not dispute this in their Reply.

As the Court has already noted, "the named Plaintiffs need not raise identical claims to all the possible claims in the class." *Petersen v. Costco Wholesale Co.*, 312 F.R.D. 565, 577 (C.D. Cal. 2016). The tests of typicality does not require identity of claims, and the named Plaintiffs claims need be only "reasonably co-extensive with those of absent class members." *Hanlon* 150 F.3d at 1020. Here, the Plaintiffs claims are "reasonably co-extensive." The same showing of liability that will entitle the named Plaintiffs to recover will also entitle absent class members to any economic damages they incurred. This is unlike *Valentino* where a finding of liability as to the class representatives claims would not establish whether the other class members suffered certain other side effects. *See id.* at 1234.

Defendants argue in their Reply that unless the class representatives establish some kind of economic damages, they are not entitled to recover from Defendants at all under a strict liability theory. Reply at 16–17. This argument, as to typicality, was raised for the first time in the Reply brief and so the Court will not address it. *See U.S. v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006) (quoting *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999)) ("arguments not raised by a party in its opening brief are deemed waived.").

### 2. Establishing Defect

Next, Defendants contend that the class representatives cannot prove that they were exposed to a contaminated product, totally defeating the class representatives' strict liability claims. Mot at 6–8. This argument does not truly challenge typicality. Instead it goes to the legal foundation of the case. If it is true that class members can only recover if they can prove that they were exposed to hepatitis A, it is highly likely that none of the class members have a claim against the Defendants. Under Defendants' theory of strict liability, the class members would need to have tested their berry mix for traces of hepatitis A, and their berry mix must have been found to be contaminated before any plaintiff could bring a claim. The Court doubts that any of the class members did this. Plaintiffs' have a different theory of strict liability law. *See* Opp'n at 12. They argue that the injury to the class members was being forced to obtain a

vaccination, not proven exposure to hepatitis A. *See id.* Even if the Defendants' theory is correct, it does not follow that the class representatives are atypical—just that the claims of the whole class are unmeritorious. Therefore, the Court finds that this argument does not show the class representatives are not typical.

### 3. Emotional Damages

Defendants go on to argue that two class representatives, Prather and Petersen, are not seeking emotional distress damages, and that they are therefore not typical. Mot. at 8–9. Plaintiffs dispute this assertion and state that all of the class representatives intend to go forward with their emotional distress claims. Opp'n 4–6. Defendants rely on isolated quotations from Prather and Petersen's depositions, where each stated they were not pursuing an emotional distress claim. *See* Mot. at 8. However, the complaint has not been amended to withdraw Prather and Petersen's claims for emotional distress. *See* TAC ¶ 66 ("The named-plaintiffs and class members have suffered economic and non-economic damages, including, . . . non-economic damages, in a sum certain amount, for the emotional distress, anxiety, and related reasonable fear of HAV infection . . . ."). Further, during Prather's deposition, her lawyer explicitly clarified that she *was* seeking emotional distress damages. Opp'n at 5–6.

Defendants cannot defeat typicality by getting the class representatives to misstate their intent to pursue certain remedies. The deposition testimony the Defendants cite, taken in full context, does not support a finding that Prather and Petersen are not pursing emotional distress damages. The testimony merely indicates that Prather and Petersen, understandably, have not memorized the name of every claim their lawyers are bringing on their behalf. Therefore, the Court finds that Prather and Petersen's misstatements pose no threat to their typicality as class representatives.

### 4. Cooked Berries

Class representative Straka ate the berry mix in her oatmeal, Mot. Ex. 9 at 32:5-6, unlike the other representatives who consumed the berry mix in smoothies. Defendants point out that oatmeal is usually prepared by boiling oats in water, which means that the berries would have been heated to at least 100 degrees Celsius in the process of cooking the oatmeal. Mot. at 10.

Hepatitis A is no longer dangerous after it is exposed to temperatures of at least 85 degrees Celsius for one minute. *See Hepatitis A questions and Answers for the Public*, Center for Disease Control, *http://www.cdc.gov/hepatitis/hav/afaq.htm.* Defendants argue that when Straka boiled the water for her oatmeal she killed both any traces of the hepatitis A virus in the berry mix and any claim she might have had against the Defendants. *See* Mot. at 9–10. At a minimum, Defendants contend that her preparation of the berries subjects Straka to defenses that would not apply to the class at large, thus making her an atypical class member. Mot. at 10.

Plaintiffs contend the Court already considered this argument when it certified the class, as the Court noted that the plaintiffs had consumed the berry mix in a variety of ways, including cooked. Opp'n at 12 (citing *Petersen,* 312 F.R.D. at 576). Plaintiffs also point out that during Straka's deposition, Defendants' attorney did not actually ask her to describe the process she used to prepare her oatmeal, Opp'n at 14 n.14, nor did the attorney clarify whether Straka had ever consumed the berries uncooked. Additionally, Plaintiffs note that in the letter Defendants sent encouraging vaccinations, the Defendants urged everyone to get a vaccine and did not state that persons who had eaten the berries cooked need not worry about contracting hepatitis A. *Id.*

It is possible that as a result of her perpetration of the berries Straka's claim will fail while some other class members will succeed. However, this is not fatal to her typicality as a class representative. A typical class representative need not show "she is immune from any possible defense, or that her claim will fail only if every other class member's claim also fails." *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1098 (C.D. Cal. 2015). Instead, she must demonstrate that "she is not subject to a defense that is not 'typical of the defenses which may be raised against other members of the proposed class.'" *Id*. (quoting *J.H. Cohn & Co. v. Am. Appraisal Assoc., Inc*., 628 F.2d 994, 999 (7th Cir.1980)). Here, the potential defense against Straka—that she should have known she was not exposed to hepatitis A because of the manner in which she consumed the berries—is likely a defense that could be raised as to numerous class members. There will be variations in the preparation of the berries across the class, as this Court noted in its certification order. Further, at this time it is unclear that Straka only consumed the berries after preparing them in such a way so as to ensure there

was no possibility of she would consume active hepatitis A. Therefore, the Court does not find Straka to be an atypical class member.

### 5. Multiple Vaccinations

Defendants argue class representative Troutman cannot be considered typical because at the time he was vaccinated for hepatitis A he also received a tetanus shot. Mot. at 10. Troutman is the only class representative who reported side effects from his vaccination. *See id.* This argument goes to the appropriate evidentiary weight that should be given to Troutman's report of an adverse reaction, not to his typicality as a class member. He has suffered the same damages as the other class representatives, and may have suffered the additional potential harm of an adverse reaction to the hepatitis A shot. Defendants are free to argue that the reaction was not a result of hepatitis A vaccine. The Court finds that Troutman still appears to be a typicaly class representative.

### 6. Washington Class Representative

Defendants point out that the Sewards cannot serve as the class representatives for the Washington sub-class, as the events giving rise to their claims occurred wholly in California. Mot. at 11. The Plaintiffs concede this and propose substituting a different married couple as class representatives. Opp'n at 24. The Court is satisfied with this solution. Plaintiffs is ordered to take appropriate action to substitute proper representatives for the Sewards.

### 7. Exposure

In Defendants' last argument against typicality, they return to their theme in this motion: the class representatives are not typical because they cannot show injury. Mot. at 12. If the class members must demonstrate that they were directly exposed to hepatitis A, then likely none of the class members have claims. If, however, the class members need only show that they consumed berries potentially infected with hepatitis A and subsequently needed to get a vaccination, then the class representatives are typical in that they risked exposure, but do not actually know if they were exposed to the virus. In either event the class members are typical— although the Court suspects that if Defendants are correct then none of the class members have claims. Therefore, the Court will not find a lack of typicality on these grounds.

**B. Predominance**

"Rule 23(b)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend,* 133 S. Ct. 1426, 1432 (2013). Rule 23(b) requires that courts "take a 'close look' at whether common questions predominate over individual ones." *Id.* The predominance inquiry "tests whether proposed class actions are sufficiently cohesive to warrant adjudication by representation." *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). In determining whether common questions predominate, the Court identifies the substantive issues related to plaintiff's claims (both the causes of action and affirmative defenses), and then considers the proof necessary to establish each element of the claim or defense; and considers how these issues would be tried. *See* Schwarzer, et al., Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 10–C § 10:412. The predominance inquiry requires that plaintiff demonstrate common questions predominate as to each cause of action for which plaintiff seeks class certification. *Amchem,* 521 U.S. at 620.

Defendants argue there is no predominance because each Plaintiff must show that their berry mix was actually contaminated with hepatitis A to recover against Defendants. Mot. at 14. Defendants argue that the fact that a product was recalled cannot be treated as evidence that the product was actually contaminated. Mot. at 20. Therefore, Defendants conclude, these claims are inappropriate for class treatment because each Plaintiff needs to offer individualized proof of the contamination of their berry mix. Mot. at 22.

None of these arguments have been developed through discovery and Plaintiffs have vigorously argued that this argument is not the proper subject of a decertification motion, as it goes directly to the merits of the Plaintiffs claims. Opp'n at 12. However, other Courts have denied certification where it was clear that individualized proof of defect was required. *See, e.g.*, *Def In re Conagra Peanut Butter Prod. Liab. Litig.*, 251 F.R.D. 689, 698 (N.D. Ga. 2008). Because the Court expects this issue to be more fully briefed by both sides in the upcoming Motion for Summary Judgment, the Court will refrain from ruling on this issue at this time.

**IV. Disposition**

For the foregoing reasons, the Court CONDITIONALLY DENIES Defendants' Motion to Decertify the Class. Plaintiff has until **December 1, 2016** to submit a Fourth Amended Complaint substituting appropriate class representatives for the Sewards.

*David O. Carter*

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

DATED:  November 15, 2016